| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Vincent V. Frounjian, Esq.          BAR NO. 170424<br>LAW OFFICES OF VINCENT V. FROUNJIAN, P.C.<br>1010 North Central Avenue, Suite 420<br>Glendale, California  91202<br>Telephone: (818) 859-7511<br>Facsimile:  (818) 859-7514<br><br><br>☐ *Individual appearing without attorney*<br>☒ *Attorney for:* **HONDA LEASE TRUST** | |

### UNITED STATES BANKRUPTCY COURT
### CENTRAL DISTRICT OF CALIFORNIA -  LOS ANGELES DIVISION

| In re:<br><br>**JACKIES COOKIE CONNECTION, LLC,**<br><br><br><br><br><br><br>Debtor(s). | CASE NO.: **2:18-bk-24571-NB**<br><br>CHAPTER: **11**<br><hr>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362**<br>**(with supporting declarations)**<br>**(PERSONAL PROPERTY)**<br><hr>DATE: **03/26/19**<br>TIME: **10:00 a.m.**<br>COURTROOM: **1545** |

**Movant: HONDA LEASE TRUST**

1. **Hearing Location**:

    ☒ 255 East Temple Street, Los Angeles, CA 90012          ☐ 411 West Fourth Street, Santa Ana, CA 92701
    ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101
    ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (if any)(Responding Parties), their attorneys (if any), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay, as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5. If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6. ☒ This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file a written response to this motion with the court and serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above no less than 14 days before the hearing and appear at the hearing of this motion.

7. ☐ This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

   a. ☐ An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

   b. ☐ An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

   c. ☐ An application for order setting hearing on shortened notice and remains pending.  After the court has ruled on that application, you will be served with another notice or an order that will specify the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date: __02/11/19__

LAW OFFICES OF VINCENT V. FROUNJIAN, P.C.
Printed name of law firm (if applicable)

VINCENT V. FROUNJIAN, ESQ.
Printed name of individual Movant or attorney for Movant

/S/ VINCENT V. FROUNJIAN
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                    Page 2                    **F 4001-1.RFS.PP.MOTION**

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO PERSONAL PROPERTY

1. Movant has a perfected security interest in the Property.

2. **The Property at Issue (Property):**

   a. ☒ Vehicle (*year, manufacturer, type, and model*): **2016 HONDA CIVIC**

      *Vehicle Identification Number:* **2HGF C1F7 XGH6 50540**
      *Location of vehicle (if known):* **DEBTOR HAS POSSESSION OF THE VEHICLE**

   b. ☐ Equipment (*manufacturer, type, and characteristics*):

      *Serial number(s):*

      *Location (if known):*

   c. ☐ Other Personal Property (*type, identifying information, and location*):

3. **Bankruptcy Case History:**

   a. ☒ A voluntary bankruptcy petition ☐ An involuntary bankruptcy petition
      under chapter ☐ 7 ☒ 11 ☐ 12 ☐ 13 was filed on (*date*) __12/17/18__.

   b. ☐ An order to convert this case to chapter ☐ 7 ☐ 11 ☐ 12 ☐ 13 was entered on (*date*) _____.

   c. ☐ Plan was confirmed on (*date*) _____.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant the requested relief from stay as follows:

      (1) ☒ Movant's interest in the Property is not adequately protected.

         (A) ☒ Movant's interest in the Property is not protected by an adequate equity cushion.

         (B) ☒ The fair market value of the Property is declining and payments are not being made to Movant
            sufficient to protect Movant's interest against that decline.

         (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's
            obligation to insure the collateral under the terms of Movant's contract with Debtor.

         (D) ☐ Other (*see attached continuation page*).

      (2) ☐ The bankruptcy case was filed in bad faith.

         (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case
            commencement documents.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 3                         **F 4001-1.RFS.PP.MOTION**

(B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

(C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

(D) ☐ Other bankruptcy cases were filed in which an interest in the Property was asserted.

(E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

(3) ☐ (*Chapter 12 or 13 cases only*)  All payments on account of the Property are being made through the plan and plan payments have not been made to the chapter 12 or chapter 13 trustee for payments due ☐ postpetition preconfirmation  ☐ postpetition postconfirmation.

(4) ☐ The lease has matured, been rejected or deemed rejected by operation of law.

(5) ☐ The Debtor filed a statement of intention that indicates the Debtor intends to surrender the Property.

(6) ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

(7) ☒ For other cause for relief from stay, see attached continuation page. (See below).
**(The debt arises from a "Lease Agreement", and Debtor does not acquire or retain an equity interest in the Vehicle.)**

b. ☐ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to 11 U.S.C. § 362(d)(2)(B), the Property is not necessary for an effective reorganization.

5. **Grounds for Annulment of the Stay.**  Movant took postpetition actions against the Property or the Debtor.

   a. ☐ These actions were taken before Movant knew that the bankruptcy petition had been filed and Movant would have been entitled to relief from stay to proceed with those actions,

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions,

   c. ☐ Other (*specify*):

6. ☒ **Evidence in Support of Motion: *(Declaration(s) must be signed under penalty of perjury and attached to this motion)***

   a. The PERSONAL PROPERTY DECLARATION on page 6 of this motion.

   b. ☐ Supplemental declaration(s).

   c. ☐ The statements made by the Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in the Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit(s) _____.

   d. ☒ Other: **Exhibit 1 - Certificate of Title**              **Exhibit 4 - Payment History**
                   **Exhibit 2 - Automobile Lease Agreement**
                   **Exhibit 3 - Kelly Blue Book**

7. **An optional Memorandum of Points and Authorities is attached to this motion.**

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

**Movant requests the following relief:**

1. Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)

2. ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to repossess and sell the Property.

3. ☐ Confirmation that there is no stay in effect.

4. ☐ The stay is annulled retroactive to the petition date. Any postpetition actions taken by Movant to enforce its remedies regarding the Property do not constitute a violation of the stay.

5. ☐ The co-debtor stay of 11 U.S.C. § 1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6. ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7. ☐ The order is binding in any other bankruptcy case purporting to affect the Property filed not later than 2 years after the date of entry of such order, except that a debtor in a subsequent case may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

8. ☐ The order is binding and effective in any bankruptcy case commenced by or against the Debtor for a period of 180 days, so that no further automatic stay shall arise in that case as to the Property.

9. ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days, so that no further stay shall arise in that case as to the Property.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☒ If relief from stay is not granted, the court orders adequate protection.

12. ☐ See continuation page for other relief requested

Date:  __02/11/19__

LAW OFFICES OF VINCENT V. FROUNJIAN, P.C.
Print name of law firm

VINCENT V. FROUNJIAN, ESQ.
Print name of individual Movant or attorney for Movant

/S/ VINCENT V. FROUNJIAN
Signature of individual Movant or attorney for Movant

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

June 2014                                Page 5                          F 4001-1.RFS.PP.MOTION

# PERSONAL PROPERTY DECLARATION

I, (*name of declarant*) **ISIS WINN** _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age. I have knowledge regarding Movant's interest in the Property (*specify*):

    a. ☐ I am the Movant.

    b. ☒ I am employed by Movant as (*title and capacity*): **BANKRUPTCY COLLECTOR**

    c. ☐ Other (*specify*):


2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans, leases, or extensions of credit given to Debtor concerning the Property. I have personally worked on books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant, which were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the acts, conditions or events to which they relate. Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event. The business records are available for inspection and copies can be submitted to the court if required.

    b. ☐ Other (see attached):


3. The Property is:

    a. ☒ Vehicle (*year, manufacturer, type, model and year*): **2016 HONDA CIVIC**

      *Vehicle Identification Number:* **2HGF C1F7 XGH6 50540**
      *Location of vehicle (if known):* **DEBTOR HAS POSSESSION OF THE VEHICLE**

    b. ☐ Equipment (*manufacturer, type, and characteristics*):

      *Serial number(s):*
      *Location (if known):*

    c. ☐ Other personal property (*type, identifying information, and location*):

---

This form is mandatory. It has been approved for use in the United States Bankruptcy Court for the Central District of California.

4. The nature of Debtor's interest in the Property is:

    a. ☐ Sole owner

    b. ☐ Co-owner (*specify*):

    c. ☐ Lessee

    d. ☒ Other (*specify*):   **BORROWER.  REGISTERED OWNER ONLY.**

    e. ☒ Debtor ☒ did ☐ did not   list the Property in the schedules filed in this case.

5. ☐ The lease matured or was rejected on (*date*) _____:

    a. ☐ rejected

        (1) ☐ by operation of law.

        (2) ☐ by order of the court.

    b. ☐ matured.

6. Movant has a perfected security interest in the Property.

    a. ☒ A true and correct copy of the promissory note or other document that evidences the debt owed by the Debtor to Movant is attached as Exhibit __**"2"**__.

    b. ☒ The Property is a motor vehicle, boat, or other personal property for which a certificate of title is provided for by state law. True and correct copies of the following items are attached to this motion:

        (1) ☒ Certificate of title ("pink slip") (Exhibit __**"1"**__).

        (2) ☒ Vehicle or other lease agreement (Exhibit __**"2"**__).

        (3) ☒ Security agreement (Exhibit __**"2"**__).

        (4) ☐ Other evidence of a security interest (Exhibit _____).

    c. ☐ The Property is equipment, intangibles, or other personal property for which a certificate of title is not provided for by state law. True and correct copies of the following items are attached to this motion:

        (1) ☐ Security agreement (Exhibit _____).

        (2) ☐ UCC-1 financing statement (Exhibit _____).

        (3) ☐ UCC financing statement search results (Exhibit _____).

        (4) ☐ Recorded or filed leases (Exhibit _____).

        (5) ☐ Other evidence of perfection of a security interest (Exhibit _____).

    d. ☐ The Property is consumer goods.  True and correct copies of the following items are attached to this motion:

        (1) ☐ Credit application (Exhibit _____).

        (2) ☐ Purchase agreement (Exhibit _____).

        (3) ☐ Account statement showing payments made and balance due (Exhibit _____).

        (4) ☐ Other evidence of perfection of a security interest (*if necessary under state law*) (Exhibit _____).

    e. ☐ Other liens against the Property are attached as Exhibit _____.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

7.  Status of Movant's debt:

   a.  The amount of the monthly payment: $ **301.99**_____.

   b.  Number of payments that became due and were not tendered:  ☒ prepetition  ☒ postpetition. **"1.8" pre & "2" post**

   c.  Total amount in arrears: $ **1,141.88 (plus late charges & fees of $165.70).**

   d.  Last payment received on (*date*): **10/22/18**____.

   e.  Future payments due by the anticipated hearing date (*if applicable*): _____
       An additional payment of $ **301.99**_____ will come due on (*date*) **02/22/19**___, and on
       the **22nd**_____ day of each month thereafter.  If the payment is not received by the _____
       day of the month, a late charge of $ _____ will be charged under the terms of the loan.

8.  ☒  Attached as Exhibit **"4"** is a true and correct copy of a POSTPETITION payment history that accurately
    reflects the dates and amounts of all payments made by the Debtor since the petition date.

9.  Amount of Movant's debt:

   a.  Principal:...............................................................................................  $ **16,879.46**_____
   b.  Accrued interest: ....................................................................................  $ **0.00**_____
   c.  Costs (attorney's fees, late charges, other costs):.................................  $ **756.00**_____
   d.  Advances (property taxes, insurance): ....................................................  $ **0.00**_____
   e.  TOTAL CLAIM as of **02/11/19**___:..................................................  $ **17,635.46**_____

10. ☒  (*Chapter 7 and 11 cases only*) Valuation: The fair market value of the Property is: $ **16,610.00**_____.
    This valuation is based upon the following supporting evidence:

   a.  ☒  This is the value stated for property of this year, make, model, and general features in the reference guide
           most commonly used source for valuation data used by Movant in the ordinary course of its business for
           determining the value of this type of property.  True and correct copies of the relevant excerpts of the most
           recent edition of the reference guide are attached as Exhibit **"3"**.

   b.  ☐  This is the value determined by an appraisal or other expert evaluation.  True and correct copies of the
           expert's report and/or declaration are attached as Exhibit _____.

   c.  ☐  The Debtor's admissions in the Debtor's schedules filed in the case.  True and correct copies of the relevant
           portions of the Debtor's schedules are attached as Exhibit _____.

   d.  ☐  Other basis for valuation (*specify*):

   ┌─────────────────────────────────────────────────────────────────────────────────┐
   │ **NOTE:**  If valuation is contested, supplemental declarations providing additional foundation for the │
   │            opinions of value should be submitted.                                   │
   └─────────────────────────────────────────────────────────────────────────────────┘

11. Calculation of equity in Property:

   a.  ☐  **11 U.S.C. § 362(d)(1) - Equity Cushion:**

       I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s)
       senior to Movant's debt is $ _____ and is _____% of the fair market value of the
       Property.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                              Page 8                              **F 4001-1.RFS.PP.MOTION**

b. ☒ **11 U.S.C. § 362(d)(2)(A) - Equity**:

By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 10 above, I calculate that the Debtor's equity in the Property is $ **None (This is a Lease Agreement)**
**(Negative $1,025.00)**

12. ☒ The fair market value of the Property is declining because:

**THE DEPRECIATING NATURE OF THE VEHICLE.**

13. ☐ The Debtor's intent is to surrender the Property.  A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

14. ☐ Movant regained possession of the Property on (*date*) _____, which is:  ☐ prepetition.  ☐ postpetition.

15. ☐ (*Chapter 12 or 13 cases only*) Status of Movant's debt and other bankruptcy case information:

a. The 341(a) meeting of creditors is currently scheduled for (or concluded on) (*date*) _____
A plan confirmation hearing is currently scheduled for (or concluded on) (*date*) _____
The plan was confirmed on (*if applicable*) (*date*) _____

b. Postpetition <u>preconfirmation</u> payments due BUT REMAINING UNPAID after the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. <u>Postconfirmation</u> payments due BUT REMAINING UNPAID after the plan confirmation date (*if applicable*):

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |
| | | $ | $ |

d. Postpetition advances or other charges due but unpaid:                    $
(*For details of type and amount, see Exhibit _____*)

e. Attorneys' fees and costs:                                         $
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:              $ [                    ]

TOTAL POSTPETITION DELINQUENCY:              $

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

g.  ☐  The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. The plan payment history is attached as Exhibit _____.  See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

16.  ☐  Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with Debtor.

17.  ☐  The bankruptcy case was filed in bad faith:

a.  ☐  Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

b.  ☐  Other bankruptcy cases have been filed in which an interest in the Property was asserted.

c.  ☐  The Debtor filed only a few case commencement documents.  Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

d.  ☐  Other (*specify*):



18.  ☐  The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

a.  ☐  The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

b.  ☐  Multiple bankruptcy cases affecting the Property:

(1)  Case name: _____
     Chapter: _____    Case number: _____
     Date filed: _____    Date discharged: _____    Date dismissed: _____
     Relief from stay regarding the Property ☐ was   ☐ was not  granted.

(2)  Case name: _____
     Chapter: _____    Case number: _____
     Date filed: _____    Date discharged: _____    Date dismissed: _____
     Relief from stay regarding the Property ☐ was   ☐ was not  granted.

(3)  Case name: _____
     Chapter: _____    Case number: _____
     Date filed: _____    Date discharged: _____    Date dismissed: _____
     Relief from stay regarding the Property ☐ was   ☐ was not  granted.

☐  See attached continuation page for more information about other bankruptcy cases affecting the Property.

☐  See attached continuation page for additional facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, and defraud creditors.

19.  ☐  Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

a.  ☐  These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

---

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

b.  ☐  Although Movant knew the bankruptcy case was filed, Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c.  ☐  For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 2/13/19 | **ISIS WINN** | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

*June 2014*                      Page 11                      **F 4001-1.RFS.PP.MOTION**

**TO PROPERLY RELEASE YOUR LIABILITY, PLEASE READ AND FOLLOW INSTRUCTIONS ON REVERSE SIDE**

SECTIONS A-J MUST BE COMPLETED IN FULL       PRINT IN CAPITAL LETTERS – USE BLACK OR BLUE INK

## NOTICE OF TRANSFER AND
## RELEASE OF LIABILITY

*MAIL THIS PORTION TO DMV-OR-FILE ONLINE AT dmv.ca.gov*

A. NEW OWNER'S LAST NAME (OR) COMPANY NAME       FIRST

B. NEW OWNER'S ADDRESS       APT NUMBER       C. ODOMETER READING (NO TENTHS)

D. CITY       STATE       ZIP CODE       E. DATE OF SALE OR LEASE RETURN
                                              MO       DAY       YR

F. SELLER'S OR LESSEE'S LAST NAME (OR) COMPANY NAME       FIRST       G. SELLING PRICE (NO CENTS)
                                                                      WHOLE
                                                                      DOLLARS

H. SELLER'S OR LESSEE'S ADDRESS       APT NUMBER       I. SELLER'S OR LESSEE'S SIGNATURE
                                                        X

J. CITY       STATE       ZIP CODE

VEHICLE ID NUMBER       YR  MODEL    MAKE       PLATE NUMBER

2HGFC1F7XGH650540       2016 HOND       7ULW584

REG 138A (REV 10/2012)

---

## STATE OF CALIFORNIA
## CERTIFICATE OF TITLE

V931608243D       VEHICLE HISTORY

AUTOMOBILE

| VEHICLE ID NUMBER | | YR MODEL | MAKE | PLATE NUMBER |
|---|---|---|---|---|
| 2HGFC1F7XGH650540 | | 2016 | HOND | 7ULW584 |

| BODY TYPE MODEL | AX | UNLADEN WEIGHT | FUEL | TRANSFER DATE | FEES PAID | REGISTRATION EXPIRATION DATE |
|---|---|---|---|---|---|---|
| SD | | G | | | $244 | 07/24/2017 |

| | YR 1ST SOLD | CLASS | YR | MO | EQUIPMT/TRUST NUMBER | ISSUE DATE |
|---|---|---|---|---|---|---|
| | 2016 FA | | XV | | | 08/24/16 |

MOTORCYCLE ENGINE NUMBER       ODOMETER DATE       ODOMETER READING
                               07/22/2016       3 MI
                               ACTUAL MILEAGE

REGISTERED OWNER(S)
HONDA LEASE TRUST LSR
JACKIES COOKIE CONNECT LLC
GALANT RACHEL LSE
12109 SANTA MONICA BLVD       -----
LOS ANGELES CA 90025

I certify (or declare) under penalty of perjury under the laws of the State of California that **THE SIGNATURE(S) BELOW RELEASES INTEREST IN THE VEHICLE.**

1a _____  X _____
      DATE            SIGNATURE OF REGISTERED OWNER

1b _____  X _____
      DATE            SIGNATURE OF REGISTERED OWNER

Federal and State law requires that you state the mileage upon transfer of ownership. Failure to complete or providing a false statement may result in fines and/or imprisonment.

The odometer now reads |_|_|_|_|_|_|_| (no tenths), miles and to the best of my knowledge reflects the actual mileage unless one of the following statements is checked. Mileage is VOID if altered or erased.

**WARNING**  ☐ Odometer reading is not the actual mileage.  ☐ Mileage exceeds the odometer mechanical limits

*I certify (or declare) under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

| DATE | TRANSFEROR/SELLER SIGNATURE(S) | DATE | TRANSFEREE/BUYER SIGNATURE(S) |
|---|---|---|---|
| | X | | X |
| PRINTED NAME OF SELLER OR AGENT SIGNING FOR A COMPANY | | PRINTED NAME OF BUYER OR AGENT SIGNING FOR A COMPANY | |

## IMPORTANT READ CAREFULLY

Any change of Lienholder (holder of security interest) must be reported to the Department of Motor Vehicles within 10 days.

LIENHOLDER(S)

HONDA LEASE TRUST       2. X _____
PO BX 997509              Signature releases interest in vehicle. (Company
SACRAMENTO CA 95899       names must be countersigned)
                          Release Date _____

                          CA167920514
026965                    REG 17 30RS (REV.02/2016)

**KEEP IN A SAFE PLACE • VOID IF ALTERED**

Exh.
1

# Honda Leadership Leasing®

**CLOSED-END MOTOR VEHICLE LEASE AGREEMENT – CALIFORNIA**

SA449S-FI
FORM# 46071
CUST# 132277
DEAL# 75557
STK # GH650540

㊋HONDA
Financial
Services

Lease Date: **07/22/2016**

| LESSEE(S) (Print Name & Address) | VEHICLE GARAGING ADDRESS (if different) | LESSOR (Dealer) |
|---|---|---|
| Name of Lessee **JACKIE'S COOKIE CONNECTION LLC** | Name of Driver **N/A** | Name of Lessor **HONDA OF SANTA MONICA** |
| Street Address **12109 SANTA MONICA BLVD** | Street Address **N/A** | Street Address **1720 SANTA MONICA** |
| City **LOS ANGELES**  State **CA** | City **N/A**  State **N/A** | City **SANTA MONICA**  State **CA** |
| Zip **90025**  County **LOS ANGELES** | Zip **N/A**  County **N/A** | Zip **90404** |
| Name of Co-Lessee **RACHEL GALANT** | Driver Phone Number **N/A** | Dealer Number **206568** |

By signing this Lease, Lessee and each Co-Lessee (collectively, "I", "my", "me") individually and together agree to lease the Vehicle, described below, according to the terms on all pages of this Lease and Lessee and each Co-Lessee are jointly and severally liable for all obligations under this Lease. I accept delivery of the Vehicle and acknowledge that it is in good operating order and has the odometer reading recorded below. "Lessor" refers to the Lessor ("Dealer") named above and Assignee. Assignee is Honda Lease Trust, the assignee for all Honda and Acura leases. American Honda Finance Corporation ("AHFC") shows as the administrator of the Lease on behalf of Honda Lease Trust. American Honda Finance Corporation is doing business as Honda Financial Services ("HFS").

**LEASE TERM:  36  MONTHS**

### VEHICLE DESCRIPTION

| **NEW** | **2016** | **HONDA  CIVIC** | **Sedan** | **2HGFC1F7XGH650540** | **3** |
|---|---|---|---|---|---|
| New/Used | Year | Make & Model | Body Style | Vehicle Identification Number | Odometer Reading |

Primary Use of Vehicle is for Personal, Family, or Household purposes unless the following box is checked: ☐ Business, Commercial, Agricultural, or Lessee is an organization or governmental entity.

### TRADE-IN VEHICLE DESCRIPTION

The following vehicle is being traded-in by the Lessee:  Year **N/A**    Make **N/A**    Model **N/A**

| Gross Trade-in Allowance (Gross agreed-upon value of the trade-in) $ **N/A** | Less: Balance Owed on Trade-in $ **N/A** | Net Trade-in Allowance (if less than 0, then enter 0) $ **0.00** |
|---|---|---|

**FOR USE BY LESSOR:** This box is for trade-in, turn-in and other individualized agreements.

Lessee agrees that if this Lease cannot be assigned by Dealer to a financial institution on terms acceptable to Dealer and Dealer gives Lessee notice within 10 days, this Lease will be rescinded. Lessee must then return the vehicle to Dealer in the same condition and Dealer will then return all consideration paid.

---

## THERE IS NO COOLING OFF PERIOD

California law does not provide for a "cooling off" or other cancellation period for vehicle leases. Therefore, you cannot later cancel this Lease simply because you change your mind, decided the Vehicle costs too much, or wish you had acquired a different vehicle. You may cancel this Lease only with the agreement of the Lessor or for legal cause, such as fraud.

---

### FEDERAL CONSUMER LEASING ACT DISCLOSURES

| 1. AMOUNT DUE AT LEASE SIGNING OR DELIVERY (Itemized Below)* | 2. MONTHLY PAYMENTS | 3. OTHER CHARGES (not part of my Monthly Payment) | 4. TOTAL OF PAYMENTS (The amount I will have paid by the end of the Lease.) |
|---|---|---|---|
| $ **680.00** | My first Monthly Payment of $ **300.61** is due on **07/22/2016** followed by **35** payments of $ **300.61**, and then followed by **N/A** payments of $ **N/A**. All payments are due on the **2nd** of each month. The total of my Monthly payments is $ **10821.96** | Turn-in Fee (if I do not purchase the Vehicle) $ **350.00**  **N/A** $ **N/A**  Total $ **350.00** | $ **11551.35** |

### 5.  ITEMIZATION OF AMOUNT DUE AT LEASE SIGNING OR DELIVERY

| A. AMOUNT DUE AT LEASE SIGNING OR DELIVERY: | | B. HOW THE AMOUNT DUE AT LEASE SIGNING OR DELIVERY WILL BE PAID: | |
|---|---|---|---|
| (1) Capitalized Cost Reduction (Amount Paid in Cash) | $ **9.58** | (1) Credit for Net Trade-in Allowance | $ **0.00** |
| Sales/Use Tax on Amount Paid in Cash | **0.86** | (2) Manufacturer Contribution | **N/A** |
| (2) Capitalized Cost Reduction (Credit for Net Trade-in Allowance) | **N/A** | (3) Dealer Contribution | **N/A** |
| Sales/Use Tax on Credit for Net Trade-in Allowance | **N/A** | (4) Amount to be Paid in Cash | **680.00** |
| (3) Advance Monthly Payment (1st Month) | **300.61** | (5) **N/A** | **N/A** |
| (4) Refundable Security Deposit | **N/A** | (6) **N/A** | **N/A** |
| (5) Initial Title Fees | **102.00** | (7) **N/A** | **N/A** |
| (6) Initial Registration Fees | **142.00** | | |
| (7) Document Processing Charge (not a governmental fee) | **80.00** | | |
| (8) Electronic Vehicle Transfer or Registration Charge (not a governmental fee) | **29.00** | | |
| (9) Other: **CA TIRE FEE** | **8.75** | | |
| (10) Other: **N/A** | **N/A** | | |
| (11) Other: **DOC TAX  7.20** | **7.20** | | |
| (12) TOTAL | $ **680.00** | (8) TOTAL | $ **680.00** |

(Continued on Page 2)

HF LS CA 02/15    **HONDA FINANCIAL SERVICES**    Lessee's Initials: _RG_ / Co-Lessee's Initials: _RG_

07/22/2016   07:40 pm
Page 1 of 5

## FEDERAL CONSUMER LEASING ACT DISCLOSURES (CONTINUED)

### 6. MY MONTHLY PAYMENT IS DETERMINED AS SHOWN BELOW:

**A. GROSS CAPITALIZED COST:** The agreed upon value of the Vehicle ($ 21984.64 ) and any items I pay for over the Lease Term (such as taxes, fees, service contracts, insurance, and any outstanding prior credit or lease balance).     $ 23224.64

**B. CAPITALIZED COST REDUCTION:** The amount of any net trade-in allowance, rebate, noncash credit, or cash I pay that reduces the gross capitalized cost.     − 9.58

**C. ADJUSTED CAPITALIZED COST:** The amount used in calculating my base monthly payment.     = 23215.06

**D. RESIDUAL VALUE:** The estimated value of the Vehicle at the scheduled end of the Lease Term used in calculating my base monthly payment.     − 14230.30

**E. DEPRECIATION AND ANY AMORTIZED AMOUNTS:** The amount charged for the Vehicle's decline in value through normal use and for other items paid over the Lease Term.     = 8984.76

**F. RENT CHARGE:** The amount charged in addition to the depreciation and any amortized amounts.     + 943.68

**G. TOTAL OF BASE PAYMENT(S):** The depreciation and any amortized amounts plus the rent charge.     = 9928.44

**H. LEASE PAYMENTS:** The number of payments required during the term of my Lease.     + 36

**I. BASE MONTHLY PAYMENT:**     = 275.79

**J. MONTHLY SALES/USE TAX:**     + 24.82

**K. OTHER:**     N/A     + N/A

**L. OTHER:**     N/A     + N/A

**M. TOTAL MONTHLY PAYMENT ("MONTHLY PAYMENT") =** $ 300.61

**EARLY TERMINATION.** I may have to pay a substantial charge if I end this Lease early. **The charge may be up to several thousand dollars. The actual charge will depend on when the Lease is terminated. The earlier I end the Lease, the greater this charge is likely to be.**

**7. EXCESSIVE WEAR AND USE.** I may be charged for excessive wear based on Lessor's standards for normal use and for mileage in excess of _____ 15000 _____ miles per year at the rate of ___ 15 ___ cents per mile.

**8. PURCHASE OPTION AT END OF LEASE TERM.** I have an option to purchase the Vehicle AS-IS, WHERE-IS at the end of the Lease Term for $ 14230.30 , plus any required taxes and fees.

**9. OTHER IMPORTANT TERMS.** Review this Lease for additional information on early termination, purchase options, maintenance responsibilities, warranties, late and default charges, insurance, and any security interests, if applicable.

### 10. ITEMIZATION OF GROSS CAPITALIZED COST

**A.** Agreed upon Value of Vehicle as equipped at the time of Lease signing     $ 21984.64

**B.** Accessories and optional equipment Lessor agrees to add after Lease signing

1. N/A     N/A
2. N/A     N/A
3. N/A     N/A
4. N/A     N/A
5. N/A     N/A
6. N/A     N/A

Total Accessories and Optional Equipment to be added     $ N/A

**C.** Sales/Use Tax     $ N/A

**D.** License, Title, and Registration Fees     $ N/A

**E.** Document Processing Charge (not a governmental fee)     $ N/A

**F.** Electronic Vehicle Transfer or Registration Charge (not a governmental fee)     $ N/A

**G.** Acquisition Fee     $ 595.00

**H.** Outstanding Prior Credit or Lease Balance     $ N/A

**I.** California Tire Fee     $ N/A

**J.** Optional Service Contracts and Products
1. Optional Maintenance Contract     N/A
2. Optional Service Contract     645.00
3. Provider: N/A     N/A
4. Provider: N/A     N/A

Total Optional Service Contracts and Products     $ 645.00

**K.** N/A     $ N/A

**L.** N/A     $ N/A

**M. Total = Gross Capitalized Cost**     $ 23224.64

### 11. WARRANTIES

If the Vehicle is new, the Vehicle is covered by the manufacturer's standard new car warranty. If the Vehicle is not new, there is no express warranty on the Vehicle unless indicated below.

☐ Used vehicle limited warranty provided by the manufacturer.     ☐ Remainder of standard new vehicle limited warranty provided by the manufacturer.

☐ Other: N/A

**LESSOR LEASES THE VEHICLE TO ME "AS IS", EXCEPT AS PROVIDED IN THIS LEASE (AND UNLESS PROHIBITED BY LAW). LESSOR MAKES NO EXPRESS OR IMPLIED WARRANTIES OR REPRESENTATIONS AS TO THE VEHICLE'S (OR ANY OF ITS PARTS OR ACCESSORIES) CONDITION, MERCHANTABILITY, SUITABILITY OR FITNESS FOR ANY PARTICULAR PURPOSE AND LESSOR MAKES NO OTHER REPRESENTATIONS OR WARRANTIES WHATSOEVER.**

### 12. OPTIONAL SERVICE CONTRACT, INSURANCE AND OTHER PRODUCTS

I do not have to purchase any of the optional products or services listed below to enter into this Lease, and they are not a factor in Lessor's credit decision. If I have indicated so below, it means I want to purchase the products and/or services for the price(s) listed below. If I have decided to purchase any of the products and/or services, I acknowledge that I have read the separate contract or notice which describes its terms and conditions. Coverage may be subject to approval by the provider. If the price of any products and/or services I bought is not part of the Itemization of Gross Capitalized Cost, I will pay for them upon Lease signing or delivery. Lessor may receive a portion of the price of any optional products and/or services I buy.

| | | Premium or Charge | Provider | Term | Lessee Initials |
|---|---|---|---|---|---|
| Optional Maintenance Contract | | $ N/A | N/A | N/A | N/A / N/A |
| Optional Vehicle Service Contract | | $ 645.00 | HONDA CARE SENTINEL | 36/ 45,000 | [initials] |
| Other | N/A (Product Description) | $ N/A | N/A | N/A | N/A / N/A |
| Other | N/A (Product Description) | $ N/A | N/A | N/A | N/A / N/A |

(Continued on Page 3)

## 13. ESTIMATED FEES AND TAXES DURING LEASE TERM

I agree to pay when due or reimburse Lessor for all title/license/registration/official fees and taxes over the term of my Lease (including any extensions), whether paid at Lease signing, included in my Monthly Payments or billed otherwise by Lessor or my taxing jurisdiction, including personal property taxes. Lessor estimates this amount to be: $ __1642.33__. The actual total of fees and taxes may be higher, or lower, depending upon whether the garaging address of the Vehicle changes, and on the tax rates in effect, or the value of the Vehicle at the time a fee or tax is assessed. Some taxes and fees may come due after the Lease terminates. I agree to pay any such amounts within 10 days of being invoiced or otherwise when indicated by the taxing authority. I will be responsible for any fines or penalties if I fail to pay the bill when due.

## 14. VEHICLE INSURANCE (See Section 22 for Additional Requirements)

I affirm that the following insurance coverage is in force as of the Lease Date. I must instruct my insurance agent to add as an additional loss payee and as an additional insured, and send the Insurance Policy, Endorsement, or Certificate to: Honda Lease Trust c/o PDP Services, P.O. Box 650201, Hunt Valley, Maryland 21065-0201.

| GEICO | | | | 910007195301 |
|---|---|---|---|---|
| Insurance Provider | | | | Policy Number |
| GEICO | | | | 866/509-9444 |
| Agent's Name | Agent's Address | City | State  Zip | Agent's Phone Number |

## 15. ARBITRATION

The parties agree that any unresolved disputes shall be submitted to arbitration in accordance with the Arbitration clause (Section 50). By initialing this Section, I am confirming that I have read this Section and the Arbitration clause, including the method of opting out of arbitration. Lessee's Initials ___ ✔    Co-Lessee's Initials ___ ✔

## 16. NOTICES

**FOR PURPOSES OF THE NOTICES BELOW "YOU" REFERS TO LESSEE.**

**YOU AGREE THAT ASSIGNEE AND AHFC MAY OBTAIN YOUR CREDIT REPORT, CREDIT SCORE OR OTHER CONSUMER REPORT FOR USE IN CONNECTION WITH COLLECTION OF AMOUNTS OWED UNDER THIS LEASE, ENFORCEMENT OF THIS LEASE, AND MARKETING SOLICITATIONS FOR RETAIL INSTALLMENT FINANCING OR LEASE PROGRAMS AFTER LEASE DATE.**

**THIS LEASE CONTAINS THE ENTIRE AGREEMENT BETWEEN YOU AND US.** No agreements exist between you and Lessor except as set forth in this Lease. The agreement between the parties may only be modified by a writing signed by you and Lessor, except that the Lease may be extended by agreement over the phone or an agreement formed through other electronic means of communication for a period of six months. No course of performance will modify the agreement between the parties or constitute a waiver of any right under this Lease. Lessee's Initials ___    Co-Lessee's Initials ___

**You have the right to return the Vehicle, and receive a refund of any payments made if the credit application is not approved, unless nonapproval results from an incomplete application or from incorrect information provided by you.**

(1) Do not sign this Lease before you read it or if it contains any blank spaces to be filled in; (2) You are entitled to a completely filled in copy of this Lease; (3) Warning—Unless a charge is included in this Lease for public liability or property damage insurance, payment for that coverage is not provided by this Lease.

**By signing below YOU acknowledge that YOU HAVE read this Lease and received a completely filled-in copy of this Lease before signing.**

## 17. SIGNATURES

**A. INDIVIDUAL LESSEE SIGNATURE(S)**

| X | N/A | X _(signature)_ | RACHEL GALANT |
|---|---|---|---|
| Lessee Signature | Name | Co-Lessee Signature | Name |

**B. BUSINESS LESSEE SIGNATURE**

| X _(signature)_ | JACKIE'S COOKIE CONNECTION LLC | CEO |
|---|---|---|
| Signature | Name | Title |

**C. LESSOR SIGNATURE AND ASSIGNMENT:** The authorized signature of the Lessor below has the effect of: (a) accepting the terms and conditions of this Lease; (b) acknowledging verification of the Lessee's insurance coverage required by this Lease; and (c) assigning to Honda Lease Trust, or its successors and assignees all of its right, title and interest in and to this Lease, the proceeds of this Lease and the Vehicle, according to the terms and conditions of the Lease Plan Agreement between Honda Lease Trust and the Lessor.

| X _(signature)_ | HONDA OF SANTA MONICA | MGR |
|---|---|---|
| Authorized Signature | Name | Title |

**SEE THE FOLLOWING PAGES FOR ADDITIONAL TERMS AND CONDITIONS**

## PAYMENTS

**18. PAYMENT SCHEDULE:** I agree to make payments to Lessor according to the schedule shown on the reverse side. The first Monthly Payment is due on the Lease Date. The second Monthly Payment must be due on or between the 1st and 28th of the month. If the total Monthly Payment includes sales or use tax, this payment amount may vary to the extent of any tax increase or decrease. I will not change or stop any Lease payments for any reason, even if the Vehicle is stolen, destroyed, seized by a governmental authority or experiences mechanical problems.

**19. LATE CHARGE/RETURNED CHECK CHARGE:** To the extent permitted by law, I will pay a late charge of the lesser of $25 or 5% of the unpaid portion of any Monthly Payment that is not received within 10 days after it is due. Returned Check Charge: I will also pay a $20 charge for any check or similar instrument returned for any reason if permitted under applicable law.

**20. SECURITY DEPOSIT:** A refundable security deposit may be part of the payment I make when I sign this Lease. At Lease termination, whether early or as scheduled, Lessor will

**22. VEHICLE INSURANCE:** I will pay for and maintain during the Lease term, and until the Vehicle is returned to Lessor, insurance on the Vehicle which has the state required minimum coverages for: (a) Public Liability insurance covering bodily injuries and property damage; and (b) Physical Damage insurance covering loss or damage to the Vehicle, with deductibles of no more than $1,000 for collision and upset loss and $1,000 for comprehensive fire and theft loss. The Policy of Public Liability Insurance must show Assignee as an additional insured. The policy of Physical Damage Insurance must show Assignee as loss payee. I may choose to get the required coverages myself or through any person. The policies must be written by an insurance company acceptable to Lessor. I agree to provide written proof of insurance to Lessor upon request, and authorize Lessor, and its agents, to contact my insurance agent and insurance company to verify coverage as required by this Lease. I further authorize Lessor to endorse my name(s) on any check or draft from my insurance company for any claim and agree that any such payments shall be delivered directly to Lessor. Lessor may change the amounts of required insurance. I acknowledge that the limits required under this Lease may not be sufficient for my needs, and will see my insurance agent for more information.

**23. VEHICLE MAINTENANCE AND OPERATING COSTS:** I will maintain the Vehicle in good working order and condition and have all necessary repairs made, using genuine manufacturer's replacement parts. I will pay all expenses for Vehicle use and operation,

## ENDING MY LEASE

**26. PURCHASE OPTION PRIOR TO THE END OF LEASE TERM:** I have the option to purchase the Vehicle AS IS, WHERE IS at any time (unless a governmental agency has seized the Vehicle and instructed Lessor not to release the Vehicle to me). This purchase option may be exercised only by the Lessee. If I purchase the Vehicle prior to the end of the Lease Term, the purchase price will be the Adjusted Lease Balance (defined below), plus (a) any payments or other charges due and unpaid under this Lease (except Excess Mileage and Excessive Wear and Use charges) and (b) any taxes or fees required by law in connection with the purchase. The "Adjusted Lease Balance" is the unamortized portion of the Adjusted Capitalized Cost, determined on an Actuarial basis, where earnings are accrued on the first day of every period. "Actuarial basis" method means the method of allocating Base Monthly Payments between: (i) the reduction of the Adjusted Capitalized Cost to the Residual Value over the Lease Term; and (ii) Rent Charges. Under this method, a Base Monthly Payment is applied first to the accumulated Rent Charges and any remainder is subtracted from, or any deficiency is added to, the balance of the Adjusted Capitalized Cost. I will re-register and retitle the Vehicle in my name at the time I purchase it. If I fail to do so, Lessor may cancel the registration.

**27. NOTICE:** If I exercise the Purchase Option under this Lease, I acknowledge that HFS, on behalf of Assignee, does hereby transfer, set over and assign all of its rights (but not its obligations) to sell such Vehicle to Honda Finance Exchange, Inc. pursuant to the Sub-Servicing and Master Exchange Agreement between HFS and Honda Finance Exchange, Inc. Notice is hereby given that all of the rights (but not the obligations) to sell the Vehicle have been assigned to Honda Finance Exchange, Inc. pursuant to such Master Exchange Agreement.

**28. EARLY TERMINATION LIABILITY:** I may terminate this Lease early at any time. If I decide to terminate this Lease early, upon return of the Vehicle to Lessor, I will owe to Lessor: (a) any monthly payments already due and unpaid and any other amounts owed arising from my failure to keep promises under this Lease; plus (b) any official fees and taxes imposed in connection with the termination; plus (c) the Early Termination Charge, which is the amount, if any, by which the then Adjusted Lease Balance (determined as described in section 26 above) exceeds the Realized Value of the Vehicle (determined as described in section 29 below); plus (d) the Turn-in Fee.

Lessor may terminate this Lease at any time if the Lease is in default, in which case, in addition to the foregoing amounts, I also agree to pay Lessor's costs of repossessing, storing, reconditioning and transporting the Vehicle as well as Lessor's costs of collection, including court costs and reasonable attorneys' fees, to the extent permitted by law.

**29. DETERMINATION OF REALIZED VALUE OF THE VEHICLE:** If the Vehicle is lost, stolen or destroyed, the Vehicle will be a "Total Loss" and the Realized Value will be the actual proceeds Lessor receives from my insurer or any other party in payment for the loss. If no proceeds are received, the Realized Value will be zero. In all other situations the Realized Value of the Vehicle upon early termination will be determined in one of the following ways: (a) by written agreement between Lessor and me, provided it is signed within 10 days (or as required by law) after I return the Vehicle to Lessor; (b) by a professional appraisal of the wholesale value of the Vehicle, if I choose to obtain one at my sole expense within 10 business days (or as required by law) after returning the Vehicle to Lessor. Lessee may select an independent third party appraiser who is acceptable to Lessor to make the appraisal; the appraised value will then be the Realized Value; or (c) if the Realized Value is not determined by (a) or (b) above within 10 days (or as required by law) after I return the Vehicle

## DEFAULT OR LOSS OF THE VEHICLE

**35. DEFAULT:** Unless otherwise prohibited by applicable law, I will be in default if: (a) I fail to make any payment when due under this Lease within the period required before a default may occur has elapsed; (b) a bankruptcy petition is filed by or against me; (c) a proceeding in receivership is filed by or against me or my property, or I make an assignment for the benefit of creditors; (d) I fail to comply with the insurance requirements of this Lease; (e) I do not repair or maintain the Vehicle as the Lease requires; (f) the Vehicle is lost, stolen, destroyed or determined by Lessor to be unsuitable for use ("Total Loss"); (g) I fail to answer traffic summons

deduct from the security deposit any amounts I owe under this Lease and do not pay. If I fully perform my obligations under this Lease, upon termination any part of the security deposit not credited will be refunded to me. In the event Lessor has not been billed for personal property taxes for the Vehicle for the year (or part thereof) in which the Lease terminates, I authorize Lessor to retain a portion of the security deposit estimated to cover any personal property tax allocation for such year and apply it to the tax when due. No interest, increase or profits will accrue or be paid to me on the security deposit.

**21. OTHER CHARGES/TOTAL OF PAYMENTS:** I understand that Section 3 of the Lease ("Other Charges") and Section 4 of the Lease ("Total of Payments") do not reflect amounts collected on behalf of third parties (such as property taxes, fines, or fees) or charges imposed if I fail to abide by or modify the terms of this Lease. I am also responsible for these amounts and will refer to all other terms and conditions of this Lease for a description of all charges due.

## VEHICLE MAINTENANCE AND USE

including maintenance, repair, fluids, tires and other expenses. At my expense, I will have the Vehicle serviced in accordance with the manufacturer's minimum recommendations and as requested by the manufacturer. In connection with any recall campaign, have the service validated, and be able to provide proof that such service has been performed. Lessor may inspect the Vehicle at any reasonable time.

**24. USE:** I will notify my insurance company and HFS immediately of any damage to or loss of the Vehicle, and will cooperate following any such incident. I will not: (a) allow unlicensed drivers to operate the Vehicle; (b) use or allow the Vehicle to be used illegally, improperly, or to transport goods or people for pay; (c) use the Vehicle in a way that causes cancellation or suspension of insurance or causes the manufacturer's warranty to become void; (d) use the Vehicle to pull trailers that exceed the manufacturer's trailer towing recommendations; (e) remove the Vehicle from the 48 contiguous United States without Lessor's written consent; or (f) change, mark or install equipment in the Vehicle without Lessor's written consent.

**25. REGISTRATION:** I will register the Vehicle, as required in the state where the Vehicle is garaged and pay for all license, title and registration costs. If I move or change the Vehicle's garaging address, I will notify HFS immediately and pay for all resulting taxes and title, registration or other fees.

to Lessor, Lessor will proceed to sell the Vehicle at wholesale in a commercially reasonable manner. The net sale price, less any fees and taxes imposed upon Vehicle disposition, will be the Realized Value.

**30. SCHEDULED END OF LEASE LIABILITY:** I agree that if I do not purchase the Vehicle at the end of the Lease term, my payment liability at that time will be the sum of: (a) any Monthly Payments already due and unpaid and any other amounts arising from my failure to keep my promises under this Lease; plus (b) any Excessive Wear and Use amounts, defined below; plus (c) any Excess Mileage charges; plus (d) any official fees and taxes imposed in connection with Lease termination; plus (e) the Turn-in Fee.

**31. EXCESSIVE WEAR AND USE/EXCESS MILEAGE:** If I do not purchase the Vehicle at the end of my scheduled Lease term, and subject to the limited waiver below, I will reimburse Lessor for the amount it would cost Lessor to repair excessive wear and use to the Vehicle, whether or not Lessor makes repairs. "Excessive Wear and Use" includes, but is not limited to: (a) any mechanical defect or failure; (b) broken or missing parts or accessories (including missing keys or remote entry devices); (c) damaged body, fenders, bumpers, metal work, lights or trim, or damaged or broken glass; (d) paint which is chipped; (e) interior rips, stains, burns, or excessively worn areas; (f) missing or unsafe wheels or tires (including spare), tires with less than 1/8th inch of tread remaining at the shallowest point; (g) damage or any other condition that makes the Vehicle unsafe or unlawful to operate; or (h) safety and emission control equipment not in proper working order. I also agree to pay for Excess Mileage as stated in Section 7.

**32. LIMITED EXCESSIVE WEAR AND USE WAIVER:** Lessor agrees to waive Excessive Wear and Use charges up to $500 if, at the end of the scheduled termination date, I am in compliance with all the terms and conditions of this Lease including, without limitation, payment obligations and insurance requirements. I remain responsible for any damage and for Excessive Wear and Use charges that are in excess of the $500 waiver. The waiver does not apply to Excess Mileage charges.

**33. RETURN OF THE VEHICLE:** Whether the Lease is terminated early or as scheduled, I agree to return the Vehicle to the Dealer's address as shown on this Lease or to any address HFS specifies. I am aware that if I am not in default, Lessor may agree to extend the Lease for an additional six months by agreement over the telephone or an agreement formed through other electronic means of communication. I agree to contact Lessor for additional details. Otherwise, if I keep possession of the Vehicle past the Lease Term, I agree to continue Monthly Payments, but I understand that continued payment does not permit me to keep the Vehicle. I agree to pay for any damages that Lessor may suffer because I failed to return the Vehicle at Lease termination.

**34. ODOMETER DISCLOSURE STATEMENT:** On termination of this Lease (or upon election to purchase the Vehicle), I agree to provide a signed written disclosure to Lessor of the correct odometer mileage on the Vehicle, as required by federal law, and understand that the failure to do so may result in fines and/or imprisonment. I agree to pay Lessor for any loss, claims, damage, costs and expenses (including legal expenses) which result from my failure to promptly provide Lessor with a correct written odometer disclosure statement.

or pay any traffic tickets or other fines when due; (h) the Vehicle becomes subject to a lien; (i) the Vehicle is seized or confiscated for any reason by a law enforcement agency; (j) I break any of my other agreements in the Lease and such breach significantly impairs the prospect of payment, performance, or realization of Lessor's interest in the Vehicle; or (k) I die. **Remedies:** In the event of default, Lessor may do any or all of the following: (a) take any reasonable measures designed either to correct the default or to save Lessor from loss, in which case I will pay Lessor upon Lessor's request for the costs and expenses incurred; (b) terminate

## DEFAULT OR LOSS OF THE VEHICLE (CONTINUED)

the Lease and my rights to possess and use the Vehicle; (c) take possession of the Vehicle by legal process or self-help, without use of force; (d) determine my termination liability on an early termination basis which I agree to pay immediately; (e) apply my security deposit to any amounts I owe; and (f) pursue any other remedy permitted by law. All of Lessor's rights are cumulative and the taking of any action will not prevent the taking of any other action. I also agree to pay Lessor for all collection and legal costs, including all reasonable attorneys' fees and court costs Lessor incurs, to the extent permitted by law.

**36. TOTAL LOSS:** If the Vehicle is lost, stolen, destroyed or determined by Lessor to be unsuitable for use, the Vehicle is a Total Loss and I am in default and I will owe the Early Termination Liability set forth in Section 28, less the Turn-in Fee.

**37. GAP WAIVER:** If I promptly report a Total Loss and I have maintained the required insurance coverages and Lessor receives all insurance proceeds, Lessor will waive the Early Termination Charge described in Section 28(c) (the "GAP Waiver"), unless an exclusion applies.

If the GAP Waiver applies, I will only owe Lessor for the insurance deductible and any amounts deducted from the insurance settlement for other, prior damage, excessive wear, excessive use and excessive mileage. Ancillary products will be canceled directly with the provider and any refunds received will be applied to my outstanding balance prior to applying the GAP Waiver. **Exclusions:** The GAP Waiver does not apply if:

(a)   the Vehicle has been seized or confiscated for any reason by a law enforcement agency;
(b)   I failed to file a police report after a Vehicle theft;
(c)   the Total Loss occurred while the Vehicle was outside the United States;
(d)   the Total Loss was caused by my wrongful act or omission, or gross negligence;
(e)   A Default, other than a payment default, has occurred and I am in Default.
(f)   I fail to provide information or documents requested by the Lessor in connection with the Total Loss, such as insurance information.

## ADDITIONAL INFORMATION

**38. OWNERSHIP:** This is a lease agreement. Lessor owns the Vehicle. I agree that this Lease is a true Lease for tax and other purposes and that Lessor will receive the benefits of ownership. Lessor has not given me any information or advice regarding any possible tax consequences or benefits under this Lease.

**39. REIMBURSEMENT AGREEMENT:** I understand and agree that I am responsible for promptly paying any fines incurred on the Vehicle, such as traffic or parking tickets, and that this liability is joint and several if this Lease is signed by more than one Lessee. I authorize Lessor to provide any information about me requested or required by a state parking or traffic authority in connection with any such parking or traffic ticket. If Lessor pays any repair bills, storage bills, taxes, fines, tickets or other charges on the Vehicle, I agree to repay the amount to Lessor immediately upon demand. If I do not pay, I will reimburse HFS and pay a $20 administrative fee, or other amount as allowed by law, for every such fine, ticket, penalty, or other charge paid on my behalf.

**40. LESSEE'S REPRESENTATIONS:** I promise that I have given true and correct information in the application for credit, and have no knowledge that would make that information untrue in the future. Lessor has relied on the truth and accuracy of that information in entering into this Lease. I promise that I have given a true payoff amount on any Vehicle traded in and I will compensate Lessor to the extent the payoff amount is inaccurate.

**41. NOTICES/NO WAIVER:** I agree to notify Lessor within 30 days of any change in my address. Unless I notify Lessor in writing of any change in my address, any notices Lessor sends me are sufficient if sent to my address as shown on this Lease. Lessor waiver or excuse of a Default is not a waiver or excuse of any future default and any delay in exercising any remedies under this Lease is not a waiver of Lessor's right to exercise those remedies. I waive all right to demand, prior notice of demand, notice of acceleration and notice of intent to accelerate. Lessor can waive or delay the enforcement of its rights as to any person signing this Lease without affecting its rights as to any other person signing this Lease. I also agree that Lessor can release any signer from his or her obligations without releasing any other signer from their obligations.

**42. SECURITY INTEREST:** I authorize HFS, on my behalf, to settle or release any claim under the insurance related to Lessor's ownership of the Vehicle, to receive and endorse any checks or drafts representing premium rebates and/or proceeds of such insurance, and to apply such amounts to my obligations under this Lease. HFS may make and receive claims for all proceeds paid or payable under any service contract purchased under this Lease for application to my obligations under this Lease. In the event I am in default under this Lease, HFS may cancel any service contracts and receive any funds paid or payable as a rebate, refund, return or otherwise.

**43. COMMUNICATION WITH LESSOR:** Calls to or from Lessor, Assignee and AHFC are monitored and recorded. You verify the above phone numbers are yours. You consent to receive emails, prerecorded messages and/or autodialed calls (including text messages) relating to this Lease, the Vehicle, your account, lease-end options, and promotions. These communications may be made by Lessor, Assignee, AHFC or their agents or assignees, even if your phone number is registered on any state or federal Do Not Call list. You may incur a charge for calls by your telephone carrier. Lessor, Assignee or AHFC may obtain and contact

email addresses and phone numbers provided by you directly or obtained through other lawful means. You agree to provide notice within 30 days of any change to your email address or phone numbers by writing to Honda at Honda Financial Services, P.O. Box 165007, Irving, TX 75016. Your consent to this provision is not required to execute this Lease.

**44. ASSIGNMENT: I agree not to transfer, sublease, rent, or assign this Lease, the Vehicle, or my right to use the Vehicle.** This Lease will be assigned to the Assignee identified on page 1. HFS will administer this Lease. I agree to make all payments and perform all other obligations under this Lease to HFS. I acknowledge that HFS (and Assignee, if different) will not have to make any repairs, maintain the Vehicle or perform any of Dealer's duties under this Lease. HFS has the power to act on behalf of Assignee to administer, enforce and defend this Lease.

**45. LIMITED POWER OF ATTORNEY:** I irrevocably appoint Lessor as my attorney-in-fact to (a) settle all insurance claims related to the Vehicle (b) endorse my name on all title, registration and other documents related to the Vehicle, such as a state Department of Motor Vehicles application for certificate of title or lien notation. This power of attorney is irrevocable and coupled with an interest.

**46. CREDIT REPORTING:** I authorize HFS and its affiliates, at any time, to reinvestigate any information provided on my credit application and to verify my current credit standing and, in the course of doing so, request and receive credit bureau reports. If I default under this Lease, I authorize HFS and its affiliates to make any credit inquiries HFS and its affiliates deem appropriate, and understand that a negative credit report reflecting on my credit record may be submitted to a credit reporting agency. I authorize HFS and its affiliates and others to exchange credit, account, and financial information about me at any time, except to the extent I have instructed Lessor otherwise and only to the extent permitted by applicable law.

**47. MODIFICATION/GOVERNING LAW:** This Lease sets forth all of the agreements between Lessor and Lessee for the lease of the Vehicle, and no modification of this Lease shall be valid unless it is made in writing and signed by Lessor and Lessee. Notwithstanding the foregoing provision and unless otherwise prohibited by law, a continuation, verbally agreed to or agreed to through electronic means of communication by Lessor and Lessee, of a Lease Term not to exceed six months beyond the originally scheduled end of Lease Term shall be valid. If any provision of this Lease is unenforceable or invalid, that provision shall be severed from the remainder of the Lease and the validity and enforceability of the remaining provisions shall not be affected or impaired. This Lease is to be governed by the laws of the state of California.

**48. LIMITATION OF LIABILITY:** I agree that Lessor is not responsible for indirect or consequential damages such as loss of profits and personal injury which are caused by any Vehicle defect, Vehicle damage or related to the time elapsed during which I do not have use of the Vehicle because it is being repaired or serviced.

**49. CLASS ACTION WAIVER. I HEREBY WAIVE ANY RIGHT I MAY HAVE TO PARTICIPATE IN A CLASS ACTION, BRING A CLASS ACTION, OR PROCEED ON A CLASS BASIS.**

## ARBITRATION: PLEASE READ THIS SECTION CAREFULLY

**50. ARBITRATION:**

**PLEASE READ THIS ARBITRATION PROVISION CAREFULLY TO UNDERSTAND YOUR RIGHTS. BY ELECTING ARBITRATION, YOU AGREE THAT ANY CLAIM THAT YOU MAY HAVE IN THE FUTURE MUST BE RESOLVED THROUGH BINDING ARBITRATION. YOU WAIVE THE RIGHT TO HAVE YOUR DISPUTE HEARD IN COURT AND WAIVE THE RIGHT TO BRING CLASS CLAIMS. YOU UNDERSTAND THAT DISCOVERY AND APPEAL RIGHTS ARE MORE LIMITED IN ARBITRATION.**

Arbitration is a method of resolving a claim, dispute or controversy without filing a lawsuit. By agreeing to arbitrate, the right to go to court is waived and instead claims, disputes or controversies are submitted to binding arbitration. This provision sets forth the terms and conditions of our agreement. YOU and HONDA agree and acknowledge that this Lease affects interstate commerce and the Federal Arbitration Act ("FAA") applies.

By signing the Arbitration Consent, YOU elect to have disputes resolved by arbitration. YOU, HONDA or any involved third party may pursue a Claim. "Claim" means any dispute between YOU, HONDA, or any involved third party relating to your account, this Lease, or our relationship, including any application, the Vehicle, its performance and any representations, omissions or warranties. "Claim" does not include personal injury or wrongful death claims. YOU or HONDA may seek remedies in small claims court or provisional judicial remedies without arbitrating.

YOU or HONDA may select arbitration with American Arbitration Association, JAMS or National Arbitration and Mediation. Contact these sponsors for their rules. The hearing will be in the federal district where YOU reside. If agreed, it may be by telephone or written submissions. Filing and arbitrator fees to be paid per the sponsor rules. You may contact the

sponsor for a fee waiver. If no fee waivers, HONDA will pay filing and arbitrator fees up to $5,000, unless law requires more. Each party is responsible for other fees. Arbitrator may award costs or fees to prevailing party, if permitted by law. HONDA will not seek fees, unless the claims are frivolous.

Arbitrator shall be an attorney or current or retired judge familiar with automotive or consumer finance. The arbitrator shall follow substantive law, statute of limitations and decide all issues relating to the interpretation, construction, enforceability and applicability of this provision. The arbitrator may order relief permitted by law. This provision is governed and enforceable by the FAA. An award shall include a written opinion and be final, subject to appeal by the FAA.

This provision survives termination of this Lease or relationship, bankruptcy, assignment or transfer. If part of this provision is unenforceable, the remainder remains in effect. If unenforceability allows arbitration as a class action, then this provision is entirely unenforceable. YOU may opt out within 30 days of signing this Lease by sending a signed, written notice to HONDA at Honda Financial Services, P.O. Box 165007, Irving, TX 75016. HONDA reserves the right to make changes to this provision after providing written notice and an opportunity to opt out.

HONDA means Lessor, Dealer, Honda Lease Trust, American Honda Finance Corporation (AHFC), American Honda Motor Co., Inc., Honda Finance Exchange, Inc., Acura Financial Services (AFS), Honda Financial Services (HFS), HVT, Inc., their parents, subsidiaries, predecessors, successors, assignees, and officers, employees, representatives and agents. YOU means Lessee and Co-Lessee to this Lease.





Certified
Pre-Owned
HONDA

1.49% APR financing
for well-qualified buyers on all Certified Pre-Owned Accord and CR-V vehicles.
See dealer for financing details.

SHOP CERTIFIED
See Offer Terms

Advertisement

# Used 2016 Honda Civic EX-L Sedan 4D

near Glendale, CA 91201 📍



**Buy from a Private Party**



Private Party Range
**$15,870 - $17,349**
Private Party Value
$16,610 ($333/month)*

Based on Good Condition

Private Party Values valid for your area through 2/14/2019

## Your Configured Options

**Engine**
4-Cyl, PZEV, 1.5T
4-Cyl, Turbo, 1.5 Liter

**Transmission**
Automatic, CVT

**Drivetrain**
FWD

**Accessory Packages**
Honda Sensing
Lane Departure Warning
LaneWatch

**Braking and Traction**
Hill Start Assist
Traction Control
Stability Control
ABS (4-Wheel)

**Comfort and Convenience**
Alarm System
Keyless Entry
Keyless Start
Air Conditioning
Power Windows

Power Door Locks
Cruise Control
Adaptive Cruise Control

**Steering**
Power Steering
Tilt & Telescoping Wheel

**Entertainment and Instrumentation**
AM/FM Stereo
CD/MP3 (Single Disc)
Premium Sound
SiriusXM Satellite
Navigation System
DVD System
Bluetooth Wireless
HondaLink

**Safety and Security**
Backup Camera
Dual Air Bags
Side Air Bags
F&R Head Curtain Air Bags

**Seats**
Heated Seats
Power Seat

Leather

**Roof and Glass**
Moon Roof

**Lighting**
Daytime Running Lights

**Exterior**
Fog Lights
Rear Spoiler

**Wheels and Tires**
Alloy Wheels
Premium Wheels
Premium Wheels 19"+

**Exterior Color**
Black
Blue
Burgundy
Gray
Red
Silver
White

## Glossary of Terms

**Suggested Retail Price** - Suggested Retail Price is representative of dealers' asking prices. It assumes that the vehicle has been fully reconditioned and takes into account the dealers' profit and costs for advertising. The final sale price will likely be less, depending on the car's actual condition, popularity, warranty and local market factors.

Tip:

Kelley Blue Book pricing is based on actual transactions

EX/1, 3

# ⓗ HONDA

## Financial Services

**JACKIES COOKIE CONNECTION LLC**

### Account Information

| | |
|---|---|
| Account Number: | |
| Vehicle Description: | 2016 HONDA CIVIC |
| Regular Payment Amount: | $ 301.99 |
| Contract Date: | 7/22/2016 |

### Account History as of 2/7/2019

| | |
|---|---|
| Date range: | 7/22/2016 to 2/7/2019 |

| Effective Date | Posted Date | Due Date | Transaction | Amount | Sales Tax | Total | Source |
|---|---|---|---|---|---|---|---|
| 1/31/2019 | 1/31/2019 | 2/22/2019 | INVOICE | | | $1,675.65 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Late Charges | $15.10 | | | |
| | | | NSF Fee | $0.00 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Current Due | $317.09 | | | |
| | | | Maintenance Fee (Acq Fee) | $66.08 | | | |
| | | | Base Rent Past Due | $1,037.08 | | | |
| | | | Late Charges | $90.60 | | | |
| | | | Monthly Tax | | $104.80 | | |
| | | | NSF Fee | $60.00 | | | |
| | | | Total Past Due | $1,358.56 | | | |
| | | | Total Due | $1,675.65 | | | |
| 12/31/2018 | 12/31/2018 | 1/22/2019 | INVOICE | | | $1,358.56 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Late Charges | $15.10 | | | |
| | | | NSF Fee | $20.00 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Current Due | $337.09 | | | |
| | | | Maintenance Fee (Acq Fee) | $49.56 | | | |
| | | | Base Rent Past Due | $777.81 | | | |
| | | | Late Charges | $75.50 | | | |
| | | | Monthly Tax | | $78.60 | | |
| | | | NSF Fee | $40.00 | | | |
| | | | Total Past Due | $1,021.47 | | | |
| | | | Total Due | $1,358.56 | | | |
| 12/22/2018 | 12/29/2018 | | Reversal of regular payment made( 12/22/2018 ) | | | $301.99 | Refund of Saleforce payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |

Exh. 4

| Effective Date | Posted Date | Due Date | Transaction | Amount | Sales Tax | Total | Source |
|---|---|---|---|---|---|---|---|
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 12/22/2018 | 12/22/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 11/30/2018 | 11/30/2018 | 12/22/2018 | INVOICE | | | $1,021.47 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Late Charges | $15.10 | | | |
| | | | NSF Fee | $20.00 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Current Due | $337.09 | | | |
| | | | Maintenance Fee (Acq Fee) | $33.04 | | | |
| | | | Base Rent Past Due | $518.54 | | | |
| | | | Late Charges | $60.40 | | | |
| | | | Monthly Tax | | $52.40 | | |
| | | | NSF Fee | $20.00 | | | |
| | | | Total Past Due | $684.38 | | | |
| | | | Total Due | $1,021.47 | | | |
| 11/22/2018 | 11/29/2018 | | Reversal of regular payment made( 11/22/2018 ) | | | $301.99 | Refund of Saleforce payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 11/22/2018 | 11/22/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 10/31/2018 | 10/31/2018 | 11/22/2018 | INVOICE | | | $684.38 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Late Charges | $30.20 | | | |
| | | | NSF Fee | $20.00 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Current Due | $352.19 | | | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |

Honda Financial Services is a DBA of American Honda Finance Corporation.

Page 2

| Effective Date | Posted Date | Due Date | Transaction | Amount | Sales Tax | Total | Source |
|---|---|---|---|---|---|---|---|
| | | | Base Rent Past Due | $259.27 | | | |
| | | | Late Charges | $30.20 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $332.19 | | | |
| | | | Total Due | $684.38 | | | |
| 10/22/2018 | 10/22/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 9/30/2018 | 9/30/2018 | 10/22/2018 | INVOICE | | | $669.28 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Late Charges | $30.20 | | | |
| | | | NSF Fee | $0.00 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Current Due | $332.19 | | | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent Past Due | $259.27 | | | |
| | | | Late Charges | $15.10 | | | |
| | | | NSF Fee | $20.00 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $337.09 | | | |
| | | | Total Due | $669.28 | | | |
| 9/22/2018 | 9/22/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 8/31/2018 | 8/31/2018 | 9/22/2018 | INVOICE | | | $654.18 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Late Charges | $15.10 | | | |
| | | | NSF Fee | $20.00 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Current Due | $337.09 | | | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent Past Due | $259.27 | | | |
| | | | Late Charges | $15.10 | | | |

| Effective Date | Posted Date | Due Date | Transaction | Amount | Sales Tax | Total | Source |
|---|---|---|---|---|---|---|---|
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $317.09 | | | |
| | | | Total Due | $654.18 | | | |
| 8/22/2018 | 8/22/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 7/31/2018 | 7/31/2018 | 8/22/2018 | INVOICE | | | $639.08 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Late Charges | $15.10 | | | |
| | | | NSF Fee | $0.00 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Current Due | $317.09 | | | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent Past Due | $259.27 | | | |
| | | | NSF Fee | $20.00 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $321.99 | | | |
| | | | Total Due | $639.08 | | | |
| 7/22/2018 | 7/23/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 6/30/2018 | 6/30/2018 | 7/22/2018 | INVOICE | | | $623.98 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | NSF Fee | $20.00 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Current Due | $321.99 | | | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent Past Due | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $301.99 | | | |
| | | | Total Due | $623.98 | | | |
| 6/22/2018 | 6/28/2018 | | Reversal of regular payment made( | | | $301.99 | Refund of Saleforce |

| Effective Date | Posted Date | Due Date | Transaction | Amount | Sales Tax | Total | Source |
|---|---|---|---|---|---|---|---|
| | | | 6/22/2018 ) | | | | payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 6/22/2018 | 6/22/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 5/31/2018 | 5/31/2018 | 6/22/2018 | INVOICE | | | $301.99 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $301.99 | | | |
| 5/22/2018 | 5/22/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 4/30/2018 | 4/30/2018 | 5/22/2018 | INVOICE | | | $301.99 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $301.99 | | | |
| 4/22/2018 | 4/23/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 3/31/2018 | 3/31/2018 | 4/22/2018 | INVOICE | | | $301.99 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $301.99 | | | |
| 3/22/2018 | 3/22/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |

| Effective Date | Posted Date | Due Date | Transaction | Amount | Sales Tax | Total | Source |
|---|---|---|---|---|---|---|---|
| 2/28/2018 | 2/28/2018 | 3/22/2018 | INVOICE | | | $301.99 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $301.99 | | | |
| 2/22/2018 | 2/22/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 1/31/2018 | 1/31/2018 | 2/22/2018 | INVOICE | | | $301.99 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $301.99 | | | |
| 1/22/2018 | 1/22/2018 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 12/31/2017 | 12/31/2017 | 1/22/2018 | INVOICE | | | $301.99 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $301.99 | | | |
| 12/22/2017 | 12/22/2017 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 11/30/2017 | 11/30/2017 | 12/22/2017 | INVOICE | | | $301.99 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $301.99 | | | |
| 11/22/2017 | 11/22/2017 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |

| Effective Date | Posted Date | Due Date | Transaction | Amount | Sales Tax | Total | Source |
|---|---|---|---|---|---|---|---|
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 10/31/2017 | 10/31/2017 | 11/22/2017 | INVOICE | | | $301.99 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $301.99 | | | |
| 10/22/2017 | 10/23/2017 | | REGULAR PAYMENT | | | $301.99 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| 9/30/2017 | 9/30/2017 | 10/22/2017 | INVOICE | | | $301.99 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $26.20 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $301.99 | | | |
| 9/22/2017 | 9/22/2017 | | REGULAR PAYMENT | | | $301.30 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $25.51 | | |
| 8/31/2017 | 8/31/2017 | 9/22/2017 | INVOICE | | | $301.30 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $25.51 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $301.30 | | | |
| 8/22/2017 | 8/22/2017 | | REGULAR PAYMENT | | | $301.30 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $25.51 | | |
| 7/31/2017 | 7/31/2017 | 8/22/2017 | INVOICE | | | $301.30 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $25.51 | | |
| | | | Total Past Due | $0.00 | | | |

| Effective Date | Posted Date | Due Date | Transaction | Amount | Sales Tax | Total | Source |
|---|---|---|---|---|---|---|---|
| | | | Total Due | $301.30 | | | |
| 7/22/2017 | 7/22/2017 | | REGULAR PAYMENT | | | $301.30 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $25.51 | | |
| 6/30/2017 | 6/30/2017 | 7/22/2017 | INVOICE | | | $301.30 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $25.51 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $301.30 | | | |
| 6/22/2017 | 6/22/2017 | | REGULAR PAYMENT | | | $299.92 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| 5/31/2017 | 5/31/2017 | 6/22/2017 | INVOICE | | | $299.92 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $299.92 | | | |
| 5/22/2017 | 5/22/2017 | | REGULAR PAYMENT | | | $299.92 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| 4/30/2017 | 4/30/2017 | 5/22/2017 | INVOICE | | | $299.92 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $299.92 | | | |
| 4/22/2017 | 4/22/2017 | | REGULAR PAYMENT | | | $299.92 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| 3/31/2017 | 3/31/2017 | 4/22/2017 | INVOICE | | | $299.92 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |

| Effective Date | Posted Date | Due Date | Transaction | Amount | Sales Tax | Total | Source |
|---|---|---|---|---|---|---|---|
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $299.92 | | | |
| 3/22/2017 | 3/22/2017 | | REGULAR PAYMENT | | | $299.92 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| 2/28/2017 | 2/28/2017 | 3/22/2017 | INVOICE | | | $299.92 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $299.92 | | | |
| 2/22/2017 | 2/22/2017 | | REGULAR PAYMENT | | | $299.92 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| 1/31/2017 | 1/31/2017 | 2/22/2017 | INVOICE | | | $299.92 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $299.92 | | | |
| 1/22/2017 | 1/23/2017 | | REGULAR PAYMENT | | | $299.92 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| 12/31/2016 | 12/31/2016 | 1/22/2017 | INVOICE | | | $299.92 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.13 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $299.92 | | | |
| 12/22/2016 | 12/22/2016 | | REGULAR PAYMENT | | | $300.61 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |

| Effective Date | Posted Date | Due Date | Transaction | Amount | Sales Tax | Total | Source |
|---|---|---|---|---|---|---|---|
| | | | Monthly Tax | | $24.82 | | |
| 11/30/2016 | 11/30/2016 | 12/22/2016 | INVOICE | | | $300.61 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.82 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $300.61 | | | |
| 11/22/2016 | 11/22/2016 | | REGULAR PAYMENT | | | $300.61 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.82 | | |
| 10/31/2016 | 10/31/2016 | 11/22/2016 | INVOICE | | | $300.61 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.82 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $300.61 | | | |
| 10/22/2016 | 10/22/2016 | | REGULAR PAYMENT | | | $300.61 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.82 | | |
| 9/30/2016 | 9/30/2016 | 10/22/2016 | INVOICE | | | $300.61 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.82 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $300.61 | | | |
| 9/22/2016 | 9/23/2016 | | REGULAR PAYMENT | | | $300.61 | EasyPay Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.82 | | |
| 8/31/2016 | 8/31/2016 | 9/22/2016 | INVOICE | | | $300.61 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.82 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $300.61 | | | |
| 8/22/2016 | 8/23/2016 | | REGULAR | | | $300.61 | EasyPay |

| Effective Date | Posted Date | Due Date | Transaction | Amount | Sales Tax | Total | Source |
|---|---|---|---|---|---|---|---|
| | | | PAYMENT | | | | Payment |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.82 | | |
| 7/31/2016 | 7/31/2016 | 8/22/2016 | INVOICE | | | $300.61 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| | | | Monthly Tax | | $24.82 | | |
| | | | Total Past Due | $0.00 | | | |
| | | | Total Due | $300.61 | | | |
| 7/22/2016 | 8/5/2016 | | FIRST LEASE PAYMENT | | | $275.79 | |
| | | | Maintenance Fee (Acq Fee) | $16.52 | | | |
| | | | Base Rent | $259.27 | | | |
| 7/22/2016 | 8/5/2016 | | LEASE FUNDING | | | $22,344.27 | Contract Funding |
| | | | LSE | $22,620.06 | | | |
| | | | LSE | $275.79 | | | |
| | | | Maintenance Fee (Acq Fee) | $595.00 | | | |
| | | | Base Rent | $9,333.44 | | | |
| | | | Dealer Remit 1st Tax for US | $24.82 | | | |
| | | | Reg Fee | $142.00 | | | |
| | | | Tax on Cash Down Payment | $0.86 | | | |
| | | | Monthly Tax | $0.00 | | | |

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:

**1010 North Central Avenue, Suite 420, Glendale, California  91202.**

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (PERSONAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) __02/13/19__, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

**See, attached page.**

☒  Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) __02/13/19__, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

**See, attached page.**

☒  Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐  Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| __02/13/19__ | __VINCENT V. FROUINJIAN__ | __/S/ VINCENT V. FROUINJIAN__ |
| --- | --- | --- |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use in the United States Bankruptcy Court for the Central District of California.

# ADDITIONAL SERVICE INFORMATION

I.    BY THE COURT VIA NOTICE OF ELECTRONIC FILING

Attorney for the Debtor:
Derrick Talerico, Esq.
Email: dtalerico@ztlegal.com, maraki@ztlegal.com,sfritz@ztlegal.com

UNITED STATES TRUSTEE
LOS ANGELES DIVISION
Email: ustpregion16.la.ecf@usdoj.gov

Attorney for the United States Trustee:
Dare Law
Email: dare.law@usdoj.gov


II.    VIA U.S. MAIL

Debtor, Jackies Cookie Connection LLC
12109 Santa Monica Blvd
Los Angeles, CA 90025

UNITED STATES BANKRUPTCY COURT
LOS ANGELES DIVISION
Edward R. Roybal Federal Building & Courthouse
255 East Temple Street
Los Angeles, California  90012
Attn: Chambers of Judge, NEIL W. BASON, Suite 1552

20 LARGEST UNSECURED CREDITORS:
(Served per attached List of 20 Largest Unsecured Creditors)

**Fill in this information to identify the case:**

Debtor name _____Jackie's Cookie Connection, LLC_____

United States Bankruptcy Court for the: Central District of California

Case number (if known): _____  _____

☐ Check if this is an
amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 20 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an *insider*, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 20 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | Maurice Rasgon 2010 Irrevocable Trust 5673 Selmaraine Dr Culver City, CA, 90230 | Maurice Rasgon 310-251-8500 maurice@cdgbeauty.com | Unsecured Loan Repayments | | | | 697,353.75 |
| 2 | Mike Jarvis 822 11th St Manhattan Beach, CA, 90266 | Mike Jarvis 310-365-0129 mjarvis880@aol.com | Unsecured Loan Repayments | | | | 412,000.00 |
| 3 | Brian Haloossim 10425 Charing Cross Rd Los Angeles, CA, 90024 | Brian Haloossim 310-923-3320 bfh24@yahoo.com | Unsecured Loan Repayments | | | | 286,117.37 |
| 4 | JCC Financing 11367 Elderwood St Los Angeles, CA, 90049 | Danny Rosenthal 312-307-6221 drosenthal@peak6.com | Factor | | | | 156,168.00 |
| 5 | Maurice Rasgon 5673 Selmaraine Dr Culver City, CA, 90230 | Maurice Rasgon 310-251-8500 maurice@cdgbeauty.com | Unsecured Loan Repayments | | | | 106,000.00 |
| 6 | Babars Kingdom Trust 10477 Troon Ave Los Angeles, CA, 90064 | Russell Grossman 310-956-0956 russellgrossman@sbcglobal.net | Unsecured Loan Repayments | | | | 104,500.00 |
| 7 | Seta H LLC 10425 Charing Cross Rd Los Angeles, CA, 90024 | Brian Haloossim 310-923-3320 bfh24@yahoo.com | Unsecured Loan Repayments | | | | 104,500.00 |
| 8 | Lee Brock 4304 Lafayette Blvd Fredericksburg, VA, 22408 | Lee Brock 540-842-7556 leebrock@juno.com | Unsecured Loan Repayments | | | | 103,133.96 |

Debtor ___Jackie's Cookie Connection, LLC_____     Case number (if known)_____
         Name

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim If the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 9 | Russell Grossman 10477 Troon Ave Los Angeles, CA, 90064 | Russell Grossman 310-956-0956 russellgrossman@sbcglobal.net | Unsecured Loan Repayments | | | | 80,524.15 |
| 10 | Smashssma LLC 14601 S Main St Gardena, CA, 90248 | Stuart Schwartz 310-380-6778 x 204 stuart@hannahmax.com | Rent for 730 E 139th St, Los Angeles 90059 | | | | 72,185.00 |
| 11 | Curtis Macnguyen Trust 11755 Wilshire Blvd Ste 1350 Los Angeles, CA, 90025 | Curtis Macnguyen 310-899-7341 cmacnguyen@ivorycapital.com | Unsecured Loan Repayments | | | | 52,100.00 |
| 12 | Stanley Rogolf 15101 Coventry Way Unit 205 Tustin, CA, 92782 | Stanley Rogoff 714-729-4026 rogo8340@gmail.com | Unsecured Loan Repayments | | | | 51,578.17 |
| 13 | Ernest Packaging 5777 Smithway St Commerce, CA, 90040 | Jennifer Delgadillo 323-923-3171 jdelgadillo@ernestpkg.com | Suppliers or Vendors | | | | 40,088.51 |
| 14 | Ameripride 5950 Alcoa Ave Vernon, CA, 90058 | Jack Hovsepian 323-277-2467 Jack.Hovsepian@AmerPride.com | Suppliers or Vendors | | | | 38,979.00 |
| 15 | Sysco 20701 E Currier Rd Walnut, CA, 91789 | Ben Wright 909-732-4673 lspiwak@sal-legal.com | Suppliers or Vendors | | | | 37,903.82 |
| 16 | The DG and MG Living Trust 15513 Orchid Ave Tustin, CA, 92782 | David and Marcy Garrett 408-691-3205 marcy_garrett@yahoo.com | Unsecured Loan Repayments | | | | 31,440.00 |
| 17 | Janiking 16885 Dallas Pkwy Addison, TX, 75001 | Daniel Moore 972-991-0900 dmoore@janiking.com | Suppliers or Vendors | | | | 30,000.00 |
| 18 | OIA Global 2100 SW River Pkwy Portland, OR, 97201 | Ben Larsen 503-415-3600 ben.larsen@oiaglobal.com | Suppliers or Vendors | | | | 27,708.00 |
| 19 | Kabbage 925B Peachtree St Ste 1688 Atlanta, GA, 30309 | Support 888-986-8263 support@kabbage.com | Unsecured Loan Repayments | | | | 26,589.94 |
| 20 | Uni Plastics East 2316 Hai An Ka Fu Nuo 12069 Shen Nan Da Dao Shenzhen Guagong CHINA, 518052 | David Quan 86-755-8667-2058 sales@uni-plastic.com | Suppliers or Vendors | | | | 26,000.00 |

Official Form 204        **Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 20 Largest Unsecured Claims**        page 2