ZOLKIN TALERICO LLP
Derrick Talerico (State Bar No. 223763)
dtalerico@ztlegal.com
David B. Zolkin (State Bar No. 155410)
dzolkin@ztlegal.com
12121 Wilshire Blvd., Suite 1120
Los Angeles, CA  90025
Telephone:      (424) 500-8551
Facsimile:      (424) 500-8951

Attorneys for Debtor and
Debtor-in-Possession

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## LOS ANGELES DIVISION

In re:

JACKIE'S COOKIE CONNECTION, LLC,
a California limited liability company,

                    Debtor and Debtor-
                    in-Possession.

Case No. 2:18-bk-24571-NB

Chapter 11

**MOTION FOR ORDER: (1) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. § 363(B) AND (F); (2) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365; (3) APPROVING THE FORM AND MANNER OF NOTICE; AND (4) APPROVING BUYER AS GOOD FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(M)**

**Hearing:**
**Date:**        **May 7, 2019**
**Time:**        **xx**
**Place:**       **Courtroom 1545**
                 **255 East Temple Street**
                 **Los Angeles, CA 90012**

TITLE                                    1

TO THE HONORABLE NEAL BASON, UNITED STATES BANKRUPTCY JUDGE,

THE OFFICE OF THE UNITED STATES TRUSTEE, AND OTHER PARTIES IN INTEREST:

Jackies Cookie Connection, LLC, the debtor and debtor-in-possession (the "**Debtor**"),

hereby submits to the Court this Motion for Order: (1) Approving Asset Purchase Agreement and

Authorizing the Sale of Property Free and Clear of Liens, Claims and Interests Pursuant to 11 U.S.C.

§ 363(b) and (f); (2) Approving Procedures Related to the Assumption of Certain Executory

Contracts and Unexpired Leases Pursuant to 11 U.S.C. § 365; (3) Approving the Form and Manner

of Notice; and (4) Approving Buyer as Good Faith Purchaser Pursuant to 11 U.S.C. § 363(m) (the

"**Motion**").  By this Motion, the Debtor seeks a hearing to be held on May 7, 2019 (the "**Sale

Hearing**") at which time the Property (defined below) will be sold. In support of the Motion, Debtor

submits the following memorandum of points and authorities and the Declaration of Rachel Galant.

## I. **INTRODUCTION**

By this Motion, Debtor requests approval of sale of substantially all of the Debtor's assets

(the "**Sale**") to the Debtor's insider CEO and owner, Rachel Galant ("**Buyer**").  By the terms of the

Sale, the Buyer will (1) purchase (a) certain equipment leased by the Debtor; (b) all of the Debtor's

intellectual property rights; and (c) certain other personal property; and (2) take assignment of (a)

certain equipment leases to which the Debtor is a party; and (b) that certain real property leashold

interest, commonly known as the "Santa Monica Café" (cumulatively, the "**Property**"), free and

clear of liens, claims, leasehold and other interests for the purchase price of $550,000.00 (the

"**Purchase Price**"), subject to overbid.

Debtor believes the Purchase Price represents the highest and best offer available for the

Property, and that the Sale is reasonable and in the best interest of Debtor's estate (the "**Estate**").

Thus, Debtor respectfully requests that the Court grant the Motion, approve the Sale, authorize the

sale of the Property to Buyer (or alternate buyer on higher and better terms than Buyer), and approve

the proposed sale procedures, as well as certain distributions related to the Sale, as set forth herein.

## II. **BACKGROUND**

### A.    **Procedural Background**

On December 17, 2018 (the "Petition Date"), Debtor filed a voluntary chapter 11 petition under title 11 of the Bankruptcy Code.  Debtor remains in possession of its assets.  No Committee has been appointed in this case. On April 11, 2019, the Office of the United States Trustee (the "UST") filed a motion to dismiss, convert, or appoint a chapter 11 trustee (the "**UST Motion**"). [Docket No. 76]. The UST Motion is set to be heard on May 7, 2019 at 1pm.

### B.    **Debtor's Pre-Petition Background**

The Debtor was a manufacturer and seller of specialty cookies, marketed under the name "Jackie's Cookies" using a family recipe handed down to the Debtor's CEO, Rachel Galant, from her mother, who owned a successful cookie company in New York and Washington, D.C. in the 1980s.  The cookies were baked at the Debtor's store front bakery in Santa Monica, California (the "**Santa Monica Café**") and wholesale baking facility in Compton, California (the "**Compton Lease**").  Cookies were sold at the bakery, at several select grocery and retail stores in Los Angeles and via the internet from the Debtor's website www.jackiescookieconnection.com.

### C.    **Major Events Leading to the Filing of the Chapter 11**

Debtor's operations grew rapidly over the past two years, and operations and financing were not aligned.  Debtor was unable to pay its debts as they became due, and on the eve of the Petition Date, Debtor was facing multiple legal actions on unpaid debts and an unlawful detainer proceeding on the Compton Lease.  Through the bankruptcy, the Debtor seeks to refinance the business and reorganize operations to allow for profitable operations.

The Debtor filed the voluntary petition commencing this chapter 11 case on December 17, 2018 (the "Petition Date").  The filing was precipitated by the unlawful detainer trial on the Compton Lease and the assurance from television personality and professional business investor Marcus Lemonis, aka "The Profit," that he would personally invest $1 million into Debtor's business through a chapter 11 bankruptcy process that could restructure Debtor's finances. With check in hand (literally), Ms. Galant commenced this case. But as the saying goes, "beware of false prophets," and this "Profit" was no different.

D.    **The Bankruptcy**

Without a committed investor, there would be no quick exit from bankruptcy. With little to no capital and no post-petition financing, Debtor's operations ground to a trickle. Debtor sought new investors and partners and explored assets sales as a means of exiting bankruptcy and maximizing value for its creditors. Interested and legitimate investors came and went. After interviewing equipment auctioneers and negotiating with the equipment lessors, an asset sale proved too difficult to execute considering the involvement of nearly ten equipment lessors. The Debtor considered discussions with current creditors to re-launch the business, but Ms. Galant did not find the terms acceptable for her personally, and those negotiations did not proceed. Although these current creditors were encouraged to make an offer for the Debtor's assets on more than one occasion, to date, no firm offer has been extended.

Without capital, the Debtor was unable to make post-petition lease payments, and came to consensual stipulations with the landlords for the Compton Lease and a storage facility near the airport, for turnover of those properties. The agreement struck with the landlord for the Compton Lease provides for continued use and access to the facility through the end of May. Most of the Debtor's equipment is located at the Compton Lease. If the equipment is not removed from the Compton Lease by the end of May, it will be abandoned.

III. **PROPERTY SALE**

A.    **The Sale and Assignment**

With a short and definitive clock running on abandonment of the equipment located at the Compton Lease, the Debtor set out to negotiate a purchase or lease assignment of all of the Debtor's equipment with a plan to sell or assign the equipment or equipment leases plus other assets and interests to Ms. Galant. By doing so, the Debtor could provide a recovery for creditors and eliminate a substantial amount of claims from the Estate.

For certain of its leased equipment, the Debtor has negotiated to purchase such equipment from its lessors. For this purchased equipment, Ms. Galant has agreed to purchase such equipment from the Debtor on a dollar-for-dollar basis equal to the Debtor's cost to acquire such assets from the equipment lessors. For certain other leased equipment, the Debtor has negotiated a cure amount to

enable the assumption of such leases and assignment to Ms. Galant as part of this sale. Here again, Ms. Galant has agreed to take assignment of such equipment leases from the Debtor on a dollar-for-dollar basis based upon the negotiated cure payment required for the Debtor to pay.

In addition to the equipment purchases and equipment lease assignments, Ms. Galant has also bid to purchase the Debtor's intellectual property (including brand, recipe, and images), and other personal property assets. The overall purchase price is anticipated to be approximately $550,000.00. After accounting for those funds needed for the Debtor to acquire full rights in the assets it is selling to Ms. Galant and to cure those equipment leases which the Debtor will assume and assign to Ms. Galant, approximately $100,000.00 is expected to flow to the Estate for payment to creditors.

B.    **Ms. Galant – Insider Buyer**.

Ms. Galant is unquestionably an insider of the Debtor. As such, she is not forbidden from purchasing assets from the Debtor, but such sale transaction is subject to heightened scrutiny to ensure fairness. For that reason, Ms. Galant and the Debtor are providing full and extensive disclosure and transparency on how the terms of the Sale were negotiated and determined, Ms. Galant's motivations in agreeing to the terms of the Sale, and Ms. Galant's intent for the Property following her purchase from the Debtor.

Ms. Galant had a viable small business before she set out on a plan to expand the Debtor's operations into a mid-sized commercial baking facility at the Compton Lease (the "**Compton Endeavor**"). She intends to re-start her business and re-establish the viable small business she had prior to the Compton Endeavor. She also must resolve her liability as a guarantor on the equipment leases (all of the equipment leases are subject to personal guaranties by Ms. Galant), the Compton Lease, the Santa Monica Café, and other debts (the "**Guaranties**"). Certain creditors with personal guaranties against Ms. Galant have already commenced lawsuits against her. Ms. Galant has few assets of meaningful value other than the equity in her home.

Ms. Galant intends to use the equity in her home to purchase the Property from the Debtor for *more than* fair value. The amounts remaining due on the equipment leases exceed their likely fair market value and in turn, (a) the amounts demanded by the equipment lessors to buy-out the equipment leases, and (b) the amounts remaining due on equipment leases which the Debtor

1    proposes to cure, assume, and assign to Ms. Galant, are also in excess of the fair market value of the

2    equipment subject to those leases. However, because of her Guaranties, it makes sense for Ms.

3    Galant to overpay to acquire the equipment in order to resolve those Guaranties, and pay the Debtor

4    the amounts required by the equipment lessors to either purchase their equipment or to cure their

5    leases.

6        Ms. Galant intends to keep those pieces of equipment for which she is proposing to take

7    assignment of the Debtor's leases to use in a re-launch of her business. For the equipment that Ms.

8    Galant is offering to purchase, she intends to engage an equipment auctioneer to immediately sell

9    such equipment to one or more third-party buyers.

10        As an additional showing of good faith,. In order to provide a means of assurance to the

11    Court and its creditors that Ms. Galant is indeed at a minimum paying a fair value for the Debtor's

12    assets, Ms. Galant will contribute 100% of any profit realized on the equipment she intends to sell,

13    after accounting for costs of sale

14        C.    **Sale Terms**

15        The Debtor and Buyer have agreed to the Sale, subject to the following terms:

16        1.    The Sale is contingent upon Bankruptcy Court approval. The Buyer's obligation to

17    consummate the Sale is subject to entry of an order that is not timely appealed, unless such

18    requirement is waived by the Buyer.

19        2.    The Sale is structured in two parts. "Part One" is the purchase of the equipment listed

20    on Schedule A, attached to the Declaration of Rachel Galant and the cure, assignment, and

21    assumption of the equipment and real property leases listed on Schedule B, attached to the

22    Declaration of Rachel Galant ("Sale Part One"). "Part Two" is the purchase of other assets of the

23    Debtor, listed on Schedule C, attached to the Declaration of Rachel Galant ("Sale Part Two").

24        3.    The Purchase Price allotted to Sale Part One is estimated at $450,000.00 (the "**Part**

25    **One Purchase Price**"). The Purchase Price allotted to Sale Part Two is estimated at $100,000.00

26    (the "**Part Two Purchase Price**").

27        4.    The Sale is contingent upon the sale or refinance of Ms. Galant's residence, which is

28    currently listed for sale. A refinance is currently in process, and expected to close within 30 days and

1    provide proceeds to Ms. Galant proceeds sufficient to pay the Part One Purchase Price. The Part

2    Two Purchase Price will be paid upon closing of the sale of Ms. Galant's residence, expected to

3    occur within 90 days or less.

4         4.    The sale of the Property will be free and clear of any and all liens, claims, and

5    interests.

6         5.    The sale of the Property is subject to competing bids for all or part of the Property. If

7    any competing bid is received prior to or at the Sale Hearing, the Debtor will consider such bid and

8    put for approval the Buyer's bid, one or more competing bids, or some combination thereof. No

9    prequalification or condition is imposed on submitting a competing bid, but any competing bidder is

10    encouraged to bring cash or cash equivalent to the Sale Hearing to increase the qualitative

11    consideration of any such competing bids.

12        D.    **Taxes**

13         Any taxes owed on the purchase of the Debtor's property will be calculated by the Debtor's

14    accountant and paid from the proceeds of the Sale.

15        E.    **Buyer Should be Afforded All Protections Under Section 363(m) as A Good**

16    **Faith Purchaser**

17         Section 363(m) of the Bankruptcy Code protects a good-faith purchaser's interest in

18    property purchased from the debtor's estate notwithstanding that the sale conducted under section

19    363(b) is later reversed or modified on appeal. Specifically, Section 363(m) states that:

20           The reversal or modification on appeal of an authorization under
       [section 363(b)] . . . does not affect the validity of a sale . . . to an

21           entity that purchased . . . such property in good faith, whether or not
       such entity knew of the pendency of the appeal, unless such

22           authorization and such sale were stayed pending appeal.

23    11 U.S.C. § 363(m). Section 363(m) "fosters the 'policy of not only affording finality to the

24    judgment of the bankruptcy court, but particularly to give finality to those orders and judgments

25    upon which third parties rely.'" *In re Chateaugay Corp.*, 1993 U.S. Dist. Lexis 6130, *9 (S.D.N.Y.

26    1993) (*quoting In re Abbotts Dairies of Penn., Inc.*, 788 F.2d 143, 147 (3d Cir. 1986)); *see Allstate

27    Ins. Co. v. Hughes*, 174 BR. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . . provides that good

28    faith transfers of property will not be affected by the reversal or modification on appeal    of an

1  unstayed order, whether or not the transferee knew of the pendency of the appeal"); *In re Stein &*

2  *Day, Inc*., 113 B.R. 157, 162 (Bankr. S.D.N.Y. 1990) ("pursuant to 11 U.S.C. § 363(m), good faith

3  purchasers are protected from the reversal of a sale on appeal unless there is a stay pending

4  appeal").

5       The selection of the Successful Bidder will be the product of good-faith negotiations. The

6  Debtor intends to request at the Sale Hearing a finding that the Byer is a good faith purchaser

7  entitled to the protections of section 363(m) of the Bankruptcy Code.

8
9  DATED:  April 16, 2019          ZOLKIN TALERICO LLP

10
11            By:  */s/ Derrick Talerico*
12                Derrick Talerico
               Attorneys for Jackie's Cookie Connection, LLC,
13            Debtor and Debtor-in-Possession

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28