RAFFI KHATCHADOURIAN - SBN 193165
**HEMAR, ROUSSO & HEALD, LLP**
15910 Ventura Boulevard, 12th Floor
Encino, California 91436-2829
Telephone: (818) 501-3800
Facsimile: (818) 501-2985

Attorneys for Objecting Secured Creditor,
DIRECT CAPITAL CORPORATION

**UNITED STATES BANKRUPTCY COURT**

**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| | |
|---|---|
| In Re:<br><br>JACKIE'S COOKIE CONNECTION LLC,<br><br>Debtor. | Case No. 2:18-24571-NB<br><br>Chapter 11<br><br>OBJECTION OF DIRECT CAPITAL CORPORATION TO CURE AMOUNTS IN CONNECTION WITH DEBTOR'S MOTION FOR ORDER: (1) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. § 363(B) AND (F); (2) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365; (3) APPROVING THE FORM AND MANNER OF NOTICE; AND (4) APPROVING BUYER AS GOOD FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(M); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF BRIAN KNOX IN SUPPORT THEREOF<br><br><u>Hearing:</u><br>Date: May 7, 2019<br>Time: 2:00 p.m.<br>Courtroom: 1545<br>Judge: Hon. Neil W. Bason<br>Location: 255 E. Temple Street<br>Los Angeles, CA 90012 |

\\\

\\\

\\\

**TO THIS HONORABLE NEIL W. BASON, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, ITS ATTORNEYS OF RECORD AND ALL INTERESTED PARTIES:**

PLEASE TAKE NOTICE that Creditor DIRECT CAPITAL CORPORATION ("DIRECT") hereby objects to the cure amounts in connection with the Debtor's Motion for Order Approving Asset Purchase Agreement.

## I.

## FACTS

On or about March 21, 2016, Debtor entered into a Master EFA Agreement (the "Agreement") with DIRECT to finance equipment described as PRJG Depositor for Cookie Babies, Model DOP 6600 (the "Depositor"), as set forth in the Equipment Schedule to the Agreement, for use in Debtor's business. True and correct copies of the Agreement, Equipment Schedule, Invoice and Prepayment Addendum are attached collectively to the Declaration of Brian Knox as Exhibit "1" and incorporated herein as though set forth in full.

The Agreement was secured by a UCC-1 Financing Statement on the Depositor as well as a blanket lien on Debtor's assets. A true and correct copy of the filed UCC-1 Financing Statement is attached to the Declaration of Brian Knox as Exhibit "2" and incorporated herein as though set forth in full.

As set forth in the Declaration of Brian Knox, as of the hearing on Debtor's Motion, the Agreement will be in arrears in the amount of $11,050.14. Moreover, recoverable attorney's fees pursuant to the Agreement total approximately $5,411.34 to date, and continue to accrue until the Agreement obligations are paid in full.

## II.

## THE CURE AMOUNT IS INCORRECT AND DOES NOT INCLUDE RECOVERABLE ATTORNEY'S FEES

### <u>A.</u> <u>The Cure Amounts Are Incorrect:</u>

Section 365(b) of the Bankruptcy Code imposes limitations on the Trustee's or Debtor-in-Possession's right to assume an unexpired Agreement or executory contract:

"(b)(1) If there has been a default in an executory contract or unexpired Agreement of the debtor, the trustee may not assume such contract or Agreement unless, at the time of assumption of such contract or Agreement, the trustee --

(A) cures, or provides adequate assurance that the trustee will promptly cure, such default

(B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or Agreement, for any actual Pecuniary loss to such party resulting from such default and

(C) provides adequate assurance of future performance under such contract or Agreement."

The Trustee or Debtor-in-Possession must accept the Agreement cum onere; i.e., assume and adopt both the benefits and the burdens of the Agreement. *In re Leon's Casuals Co., Inc.*, 122 B.R.768 (Bankr. S.D. Ala. 1990); *In re Lafayette Radio Elec. Corp.*, 9 B.R. 993 (Bankr. E.D.N.Y. 1981). As expressed in the legislative history:

"If the trustee is to assume a contract or Agreement, the courts will have to insure that the trustee's performance under the contract or Agreement gives the other contracting Party the full benefit of his bargain." H.R. Rep. No. 595, 95th Cong., 1st Sess. 348 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 59 (7978).

As set forth herein, the Debtor has substantial pre- and post-petition defaults and obligations, including $11,050.14 in defaulted payments, plus attorney's fees of not less than $5,411.34 to date. These obligations, amounting to not less than $16,461.48 as of this date, constitute the cure amount necessary to provide DIRECT with the benefit of its bargain.

**B. The Debtor Is Liable For DIRECT's Attorney's Fees Under 11 U.S.C. §365.**

Pursuant to the terms of the Agreement (paragraph 15), DIRECT is entitled to recover its attorney's fees. DIRECT has incurred attorney's fees of not less than $5,411.34 to date in the present Chapter 11 case. *Cf. Johnson v. Righetti (In re Johnson),* 756 F.2d 738 (9th Cir. 1985).

Pursuant to Section 365(b)(1)(A), the Debtor must cure these defaults or provide adequate assurance of prompt cure before this Court may approve the proposed assumption and assignment.

The Ninth Circuit Bankruptcy Appellate Panel has considered and ruled directly on this issue. *In re Bullock*, 17 B.R. 438 (BAP 9th Cir. 1982). Holding that reasonable attorney's fees due under a Agreement clause must be paid as an element of both curing defaults under subsection (b)(1)(A) and compensation for actual pecuniary loss under subsection (b)(l)(B), the *Bullock* Court reasoned:

"The purpose of §365(b)(1)(B) is to indemnify the other party to the contract or Agreement being assumed, against loss. The purpose of an attorney's fee clause in a Agreement as well as an attorney's fee clause in a security agreement is the same, to indemnify the lessor or secured party against legal expenses incurred by reason of the other party's default."

*Id.* at 439.

*See* also, *In re Westview 74th Street Drug Corp.*, 59 B.R. 747 (Bankr. S.D.N.Y 1986). *Westview 74th Street*, granting debtor's Motion to assume "subject to . . . payment of reasonable attorney's fees," summarizes the unanimity of judicial opinion as follows:

"The cases considering claims such as the landlord's here have consistently recognized that an express contractual provision for attorney's fees gives rise to a right to obtain a reasonable attorney's fee as part of curing the debtor's default and in compensation for the landlord's actual pecuniary loss under section 365 of the Code." *See Andrew v. KMR Corporation (In re Bullock)*, 17 B.R. 438,439 (BAP 9th Cir. 1982); *255 Turnpike Associates v. J.W Mays, Inc. (In re J.W. Mays. Inc.)*, 30 B.R. 769 (Bankr. S.D.N.Y. 1983); *LJC Corporation v. Boyle*, 768 F.2d 1489 (D.C. Cir. 1985); *cf. In re Masnorth Corp.*, 36 B.R. 335, 337-40 (Bankr. N.D. Ga. 1984). Id. at 756.

Accordingly, Debtor must reimburse DIRECT for its attorney's fees in connection with the assumption and assignment of the Agreement.

**III.**

**CONCLUSION**

Based on the foregoing, DIRECT CAPITAL CORPORATION objects to the Cure Amount in Connection with the Debtor's Motion for Order Approving Asset Purchase Agreement. The correct cure amount comprises $11,050.14 in defaulted payments, plus attorney's fees of not less than $5,411.34 to date, for a total required cure amount of not less than $16,461.48.

Dated: April 30, 2019

Respectfully submitted,

HEMAR, ROUSSO & HEALD, LLP

By: /s/ Raffi Khatchadourian
RAFFI KHATCHADOURIAN
Attorneys for Objecting Secured Creditor
DIRECT CAPITAL CORPORATION

**DECLARATION OF BRIAN KNOX**

I, BRIAN KNOX, declare as follows:

1. I am a Senior Legal Recovery Specialist and Authorized Representative for Creditor DIRECT CAPITAL CORPORATION ("DIRECT") and am principally responsible for the collection of the subject indebtedness owed to DIRECT.

2. At all relevant times I have had responsibility for the collection of DIRECT's account with respect to the Collateral which is the subject of this Declaration and I have custody and control of the business records kept and maintained by DIRECT in the regular course of it business with respect to such account. Moreover, I have personal knowledge of the facts hereinafter set forth except where stated on information and belief and where so stated, I am informed and believe that such facts are true and correct. If called as a witness, I could and would testify thereto.

3. On or about March 21, 2016, Debtor entered into a Master EFA Agreement (the "Agreement") with DIRECT to finance equipment described as PRJG Depositor for Cookie Babies, Model DOP 6600 (the "Depositor"), as set forth in the Equipment Schedule to the Agreement, for use in Debtor's business. True and correct copies of the Agreement, Equipment Schedule, Invoice and Prepayment Addendum are attached collectively hereto as Exhibit "1" and incorporated herein as though set forth in full.

4. The Agreement was secured by a UCC-1 Financing Statement on the Depositor as well as a blanket lien on Debtor's assets. A true and correct copy of the filed UCC-1 Financing Statement is attached hereto as Exhibit "2" and incorporated herein as though set forth in full.

\\\

\\\

\\\

5. As of the hearing on Debtor's Motion, the Agreement will be in arrears in the amount of $11,050.14. Moreover, recoverable attorney's fees pursuant to the Agreement total approximately $5,411.34 to date, and continue to accrue until the Agreement obligations are paid in full.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 30, 2019, at Portsmouth, New Hampshire.

BRIAN KNOX

**PROOF OF SERVICE OF DOCUMENT**

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is: 15910 Ventura Boulevard, Twelfth Floor, Encino, CA 91436.

A true and correct copy of the foregoing document described as **OBJECTION OF DIRECT CAPITAL CORPORATION TO CURE AMOUNTS IN CONNECTION WITH DEBTOR'S MOTION FOR ORDER: (1) APPROVING ASSET PURCHASE AGREEMENT AND AUTHORIZING THE SALE OF PROPERTY FREE AND CLEAR OF LIENS, CLAIMS AND INTERESTS PURSUANT TO 11 U.S.C. § 363(B) AND (F); (2) APPROVING PROCEDURES RELATED TO THE ASSUMPTION OF CERTAIN EXECUTORY CONTRACTS AND UNEXPIRED LEASES PURSUANT TO 11 U.S.C. § 365; (3) APPROVING THE FORM AND MANNER OF NOTICE; AND (4) APPROVING BUYER AS GOOD FAITH PURCHASER PURSUANT TO 11 U.S.C. § 363(M); MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION OF BRIAN KNOX IN SUPPORT THEREOF** will be served or was served (a) on the judge in chambers in the form and manner required by LBR 5005-2(d); and (b) in the manner indicated below:

**I. TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** - Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On **April 30, 2019,** I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

U.S. Trustee's counsel Dare Law, Esq. dare.law@usdoj.gov
Debtor's counsel Derrick Talerico, Esq. dtalerico@ztlegal.com, maraki@ztlegal.com, sfritz@ztlegal.com
United States Trustee (LA) ustpregion16.la.ecf@usdoj.gov
Attorneys for Creditor Smashssma LLC: Michael S. Kogan, Esq. mkogan@koganlawfirm.com
Attorneys for Creditor Continental Bank: Brett H. Ramsaur, Esq. brett@ramsaurlaw.com
Unsecured Creditor Synchrony Bank by PRA Receivables Management LLC, Authorized Agent: Valerie Smith: claims@recoverycorp.com
Attorneys for Creditor Honda Lease Trust: Vincent V. Frounjian, Esq. vvf.law@gmail.com
Attorneys for Creditor Ally Bank: Adam N. Barasch, Esq. adb@severson.com; cas@severson.com; nye@severson.com
Attorneys for Creditor Brian Haloossim: Sandford L. Frey, Esq. sfrey@leechtishman.com; lmoya@leechtishman.com; dmulvaney@leechtishman.com

**II. SERVED BY U.S. MAIL:**
On **April 30, 2019**, I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Debtor Jackie's Cookie Connection LLC, 12109 Santa Monica Blvd., Los Angeles, CA 90025
Creditor Continental Bank, c/o Bradley R Jones, Vice President, 15 W South Temple, Ste 300, Salt Lake City, UT 84101
Creditor Budget Uniform Rental Inc. c/o Caleb Donner Esq., Donner & Donner, 910 Hampshire Road, Suite R, Westlake Village, CA 91361
Creditor Wells Fargo Bank N.A., 800 Walnut Street, MACF0005-055, Des Moines, IA 50309
\\\

\\\

**III. SERVED BY MESSENGER**: Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on **April 30, 2019**, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows. Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| April 30, 2019 | DENISE PAUFF | /s/ Denise Pauff |
|---|---|---|
| **Date** | **Type Name** | **Signature** |

EXHIBIT 1

DIRECTCAPITAL CIT

**MASTER EFA AGREEMENT Page 1 of 3**

155 Commerce Way, Portsmouth, NH 03801 | Ph: 800-999-6942 | F: 800-875-0312

Master EFA Agreement #[redacted]2796

| CUSTOMER: Please verify this section and complete any missing information | | | |
|---|---|---|---|
| Client: JACKIE'S COOKIE CONNECTION, LLC | | | |
| Address: 12106 Santa Monica Blvd | | | |
| City: Los Angeles | State: CA | Zip: 90025 | County: Los Angeles |
| Federal Tax ID: | | State of Incorporation: CA | Home Phone: |
| Business Phone: (310) 428-8069 | Fax: | | Email: |

INSTRUCTIONS: The words "You" and "Your" refer to the Customer (the party who is borrowing funds against the Equipment or as a direct loan); "We", "Us" and "Our" refer to Direct Capital Corporation and its assigns, the Secured Party. Please complete and/or verify information and sign or authenticate where noted. Please call with any questions.

1. MASTER EFA & SCHEDULES: You agree to finance the Equipment or borrow funds as described in each Schedule ("Schedule") executed in accordance with this Master Equipment Finance Agreement ("Master EFA"). Each Schedule shall constitute a separate agreement distinct from this Master EFA, except that all terms contained herein are deemed part of each Schedule. In the event of a conflict between this Master EFA and a Schedule, the provisions of the Schedule, or its Addendum, shall prevail. The term "EFA" when used herein means collectively, each Schedule and this Master EFA. The term of this Master EFA begins on the first Schedule's Commencement Date and continues as long as any Schedule remains unpaid. You authorize Us to insert or correct information on the EFA including Your proper legal name, address, dates and Equipment description. All notices shall be in writing addressed to You at Your address stated herein or to Us at 155 Commerce Way, Portsmouth, NH 03801.

2. EQUIPMENT: You have chosen the equipment as set forth on each Schedule as applicable ("Equipment"). You acknowledge that the Equipment is financed for You solely for commercial or business purposes and not for personal, family, agricultural or household purposes. If the Equipment is unsatisfactory, Your only remedy is against its supplier or manufacturer and You have no remedy for damages against Us. Your confirmation to Us, by phone or execution or authentication of Equipment Acceptance, of the delivery of the Equipment shall constitute Your acknowledgment that You have inspected the Equipment, found it satisfactory in all respects and have accepted it. You will maintain Equipment location records and provide Equipment location to Us upon demand. You are responsible for keeping the Equipment in good repair, condition and working order, except for normal wear and tear. You are responsible for complying with all laws relating to the Equipment or its use and to protect the Equipment from damage, seizure or loss. You will continue to make payments if any damage, seizure or loss occurs to any part of the Equipment, even if the Equipment is completely destroyed or, at Our option, pay Us the amount described in the Defaults and Remedies section of the EFA on the next payment date. We are not responsible for any losses, damages or injuries caused by the installation or use of the Equipment or from any other loss while You have the Equipment and You agree to hold Us harmless and defend Us against any claim for loss, damages or injuries, including attorney's fees and related costs.

3. NO WARRANTY: We are financing Equipment for You "AS IS" "WHERE IS" AND WITH ANY AND ALL FAULTS. As We did not select, manufacture, supply or inspect the Equipment, WE MAKE NO WARRANTY OR REPRESENTATION, either express or implied as to the condition of the Equipment, its merchantability, its fitness or suitability for any particular purpose, its design, its capacity, its quality, or any other characteristics of the Equipment. We are not responsible for packaging, delivery, installation or testing of the Equipment. You agree that You have selected the supplier and each item of Equipment based on Your own judgment and disclaim any reliance upon any statements or representations made by Us. The supplier is not an agent of Ours and nothing the supplier states can affect Our obligation under this agreement. You will continue to make all payments under the EFA regardless of any claim or complaint against any supplier.

4. REPRESENTATIONS: You represent and warrant that You, and each of the individuals signing or authenticating the EFA, have the lawful power and authority to enter into the EFA, by entering into the EFA You will not violate any law or other agreement, and the location of Your chief executive office, state of incorporation or organization, exact legal name, place of residence and Federal Tax ID number are accurately listed in the EFA. The EFA will constitute Your legal, valid and binding obligation, enforceable against You in accordance with the terms hereof. If a corporation, You are duly organized, duly authorized, validly existing and in good standing. THE EFA CANNOT BE TERMINATED OR CANCELED BY YOU FOR ANY REASON. Your obligation to make payments under the EFA is absolute and unconditional.

5. ASSIGNMENT: YOU HAVE NO RIGHT TO SELL, TRANSFER, ASSIGN OR LEASE THE EQUIPMENT OR YOUR RIGHTS UNDER THE EFA. You understand that We, without prior notice, have the right to assign, sell or otherwise transfer the EFA. You understand that Our assignee will have the same rights and benefits but They do not have to perform any of Our obligations. You agree that the rights of Our assignee will not be subject to any claims, defenses or setoff that You may have against Us.

6. SECURITY DEPOSIT: The security deposit, listed on a Schedule, is payable upon execution, is non-interest bearing, will be commingled with Our other funds and secures Your performance under the EFA. We may apply the security deposit to satisfy any amounts owed by You, in which event You will promptly restore the security deposit to its full amount. If all conditions are fully complied with and You have not ever been in default, the security deposit will be refunded to You after the end of the term of each Schedule.

7. INDEMNITY: You indemnify Us and Our shareholders, directors, officers, employees, agents and assignees against any claims, actions, damages, fines, penalties, causes of action, suits or other legal proceedings or liabilities including all attorney fees, arising out of or connected with the EFA or any Equipment, without limitation. Such indemnification shall survive expiration, cancellation or termination of the EFA.

8. LAW: The EFA is governed exclusively by the laws of New Hampshire. You agree and consent to the exclusive jurisdiction and venue of any State or Federal Court in Rockingham County, New Hampshire. You waive any right to challenge the jurisdiction or venue for any reason; You waive the defense of Forum Non Conveniens. The EFA is intended to constitute a valid and enforceable legal instrument and no provision of the EFA that may be deemed unenforceable shall in any way invalidate any other provision or provisions hereof, all of which shall remain in full force and effect. The EFA constitutes the entire agreement between the parties. YOU AGREE TO WAIVE ALL RIGHTS TO A JURY TRIAL.

9. TAXES: You agree to pay when due or at a frequency set by Us all taxes (including sales, use, and personal property tax, fines and penalties) and fees relating to the EFA or the Equipment. If We make payment on any of the above, You agree to reimburse Us. You agree to pay the Property Tax Administration fee of $70 per year.

PERSONAL GUARANTY: As consideration for Us entering into the EFA, the undersigned Guarantor ("You", "Your"), jointly and severally, unconditionally personally guaranties that the Customer will make all payments and meet all obligations required under the EFA fully and promptly. You agree that We, Direct Capital Corporation, the Secured party, may make other arrangements including compromise or settlement with the Customer and You will waive all defenses and notice of those changes and will remain responsible for the payment and obligations of the EFA. We do not have to notify You if the Customer is in default. If the Customer defaults, You will immediately pay in accordance with the default provision of the EFA all sums due under the terms of the EFA and will perform all the EFA obligations. If it is necessary for Us to proceed legally to enforce this guaranty, You expressly consent to the jurisdiction of the court set out in the 'Law' paragraph and agree to pay all costs, including attorneys fees incurred in enforcement of this guaranty. It is not necessary for Us to proceed first against the Customer or the Collateral before enforcing this guaranty. You grant Us continuing authority to access, review and update, from time to time, credit reference information, including credit bureau reports. All financial providers are hereby directed and authorized to release to Us any and all information pertaining to any of Your accounts.

Signature or authentication of the Guarantor (an individual)

X [signature] 3/21/16

Rachel Gallant NO TITLE Date

Signature or authentication of the Guarantor (an individual)

X [signature] 3/21/16

Jacqueline Karin NO TITLE Date

Copyright ©2013 Direct Capital Corp., All rights reserved.

DIRECTCAPITAL CIT

MASTER EFA AGREEMENT Page 2 of 3

10. INSURANCE. You agree to keep the Equipment fully insured against loss, theft, damage, destruction with Us as loss payee and additional insured in an amount not less than the original cost of the Equipment for the term of each Schedule. You also agree to obtain a general public liability insurance policy from a provider and in amounts acceptable to Us and name Us as an insured on the policy. You agree to provide Us certificates or other evidence of insurance acceptable to Us before each Schedule commences, prior to each insurance renewal and within 10 days of Our request. You agree that if said insurance is not received by Us, is cancelled or expires and is not replaced, We have the right, but not the obligation, to secure insurance on the Equipment from a carrier of Our choosing in such forms and amounts as We deem reasonable to protect Our interest. Insurance We secure will not name You as an insured and may not fully protect Your interests and You will pay Us an insurance charge that will include a premium, which may be substantially higher than the premium that You would pay if placed independently. In addition to the premium, You will pay Us a fee that will include an interest charge and administrative and processing fees, which will result in profit to Us and Our agents. At any time, You can avoid these costs by delivering the required proof of insurance to Us. Nothing in this paragraph will relieve You of Your responsibility for liability insurance coverage on the Equipment. We may negotiate and settle for Our benefit all property damage claims and all liability claims involving Us or the Equipment and may sign or endorse Your name on any draft, check or instrument representing insurance proceeds covering the Equipment. We shall retain any physical damage insurance proceeds arising out of a theft, loss or damage up to the full amount owed under the EFA. You will remain responsible for any deficiency.

11. PAYMENTS, INTERIM PAYMENT, FEES & OTHER CHARGES, RATE FACTOR: You agree to pay Us the periodic payments for the term (including any extensions) of the EFA in accordance with the Schedule plus any applicable sales tax, use tax or property tax. We have the right to apply all sums received from You to any amounts due Us pursuant to the EFA. You agree to pay Us a nonrefundable documentation fee plus all other reasonable fees associated with the EFA, including, but not limited to, credit inquiry, site inspection, appraisal, UCC search and filing, titling fees and costs, including a termination fee of up to $379, unless otherwise noted, payable upon termination of each Schedule. Your signature or other authentication is an irrevocable offer to enter into the EFA. In the event that You sign or otherwise authenticate the EFA, but the EFA is not commenced, the advance payments, documentation fee and security deposit may be retained by Us to compensate for Our documentation, processing and other expenses. A late payment charge of 15% of the amount due will be assessed on any payment not paid within 3 days of the due date; interest on any delinquent amount due shall be charged from the due date until paid at the highest legal rate. You also agree to pay Our standard NSF fee for each payment returned for insufficient funds. You agree to pay Us, upon receipt of Your first invoice, Interim Payment, a partial payment for the use of the Equipment or loan proceeds prior to the first regular payment due date. Interim Payment shall be in an amount equal to 1/30th of the monthly payment, multiplied by the number of days from the Commencement Date to the first payment due date payable up on receipt of invoice. Rate Factor: Each monthly payment includes, in addition to reimbursement of Equipment cost or loan amount, a return on Our investment expressed as the rate factor which can be characterized as a finance charge. Equipment cost or loan amount is the payment divided by the Rate Factor. The total dollar amount of the finance charge is equal to the payment times the Term plus the processing fees less Equipment cost or loan amount.

12. COMPUTER SOFTWARE: Notwithstanding any other terms of the EFA, You agree that as to software only: We have not had, do not have, nor will have any title to such software. You have executed or will execute or otherwise authenticate a separate software license agreement and We are not a party to and have no responsibilities whatsoever in regard to such license agreement. You have selected the software as per the Equipment paragraph of the EFA and We make no warranties of merchantability, data accuracy, system integration or fitness for use and take absolutely no responsibility for the function or defective nature of such software.

13. EQUIPMENT OWNERSHIP: You are the owner of the Equipment under each Schedule as applicable and have title to the Equipment subject to Our lien. You agree to keep the Equipment free and clear of all liens, claims and encumbrances. We have the right to inspect the Equipment at any time.

14. UCC FILINGS: To secure Your obligations under the EFA, You hereby grant Us a first priority security interest in the Equipment, and a security interest in all goods, inventory, equipment, accounts, accounts receivable, investment property, securities, fixtures and other property, now or hereafter belonging to You or in which You have an interest, and in all proceeds, including insurance proceeds, thereof ("Collateral"), and You hereby authorize Us to file UCC Financing Statements or similar instruments to perfect such interest.

15. DEFAULT & REMEDIES: You will be in default if: You fail to make any required payment under the EFA when due, You fail to perform any other obligation of the EFA or other agreement with Us, any representation or warranty made by You is false, a material adverse change (as determined by Us) occurs in Your financial condition or We believe the prospect of payment is impaired, You enter or have entered against You insolvency, bankruptcy or similar proceedings, the death of a personal guarantor or You attempt to repudiate or revoke any agreement with Us ("Default"). If You are ever in Default, We, with or without notice to You, may retain Your security deposit; terminate or cancel the EFA or any of Our obligations to You, require that You pay the unpaid remaining payments (discounted at 4%), the amount of any purchase option and late charges, taxes, fees and interest on the same; sue for and recover from You any and all amounts due Us; enter the Equipment and Collateral location and repossess and remove, or render unusable, the Equipment and Collateral; require You to make the Equipment and Collateral available to Us at a location determined by Us; sell or lease the Equipment and Collateral to any party without notice under such terms and conditions as We alone shall determine; refer the EFA to an attorney for collection and pursue all other remedies available to Us under any agreement, any applicable law or the UCC. You agree to pay all costs and expenses related to collection or repossession, including fees. You agree that any delay or failure to enforce Our rights under the EFA does not prevent Us from enforcing any rights at a later time. You agree that We will not be responsible to pay You any consequential or incidental damages you claim under the EFA.

16. FAX & ELECTRONIC DOCUMENTS: No modification to the EFA as supplied by Us to You shall be effective unless agreed to in writing or other authentication by Us. A fax or copy version of Your signature on the EFA when received by Us shall be binding on You for all purposes as if originally signed. Each of this Master EFA and each Schedule shall only become binding against Us when actually signed or otherwise authenticated by Us. Both You and We agree that the written version of the EFA containing Our original signature and Your original, fax or copy signature may constitute the original authoritative version, and that the electronic version of the EFA which has been authenticated by You and Us in accordance with applicable law and controlled by the Owner (pursuant to the rules and regulations of eOriginal, Inc.) shall constitute the original authoritative version of the EFA; provided that if the "Paper Out" process shall have occurred pursuant to the eOriginal product Reference Guide, and there shall simultaneously exist both the "Paper Out" printed version and an electronic version of the EFA, then the "Paper Out" printed version of the EFA as identified in the eOriginal audit record and corresponding affidavit shall constitute the sole authoritative version. Both You and We hereby agree that the EFA may be authenticated by electronic means, and expressly consent to the use of the electronic version of the EFA to embody the entire agreement and the understanding between You and Us. You wish to continue to receive information at Your fax and/or email addresses. The EFA may be executed in any number of counterparts, and all such counterparts, taken together, shall constitute one and the same instrument. Reference herein to eOriginal shall mean eOriginal, Inc., Baltimore, MD, or any successor electronic custodian appointed by Us.

17. CELL PHONE CONSENT: You agree that by providing Us with a telephone number for a cellular phone or other wireless device, You are expressly consenting to receiving communications – including but not limited to prerecorded or artificial voice message calls, text messages, and calls made by an automatic telephone dialing system – from Us to You, or Our assigns, and its affiliates and agents at that number. This express consent applies to each such telephone number that you provide to Us now or in the future and permits such calls regardless of their purpose. These calls and messages may incur access fees from your cellular provider.

ACCEPTED:

Customer: JACKIE'S COOKIE CONNECTION, LLC

x [signature] 3/21/16
Rachel Cx Tant Member Date

Secured Party: Direct Capital Corporation

x [signature] 4-12-16
Authorized Representative Date

Copyright ©2011 Direct Capital Corp. All rights reserved.

EXHIBIT 1

DIRECTCAPITAL

**EQUIPMENT SCHEDULE #[redacted]5038**
**Master EFA Agreement #[redacted]2796**

This Equipment Schedule incorporates the terms and conditions of the referenced Master EFA. Each capitalized term has the same meaning given to it in the referenced Master EFA unless otherwise defined here. You have reviewed and acknowledge all terms of this EFA. Please sign or authenticate where noted.

**CUSTOMER INFORMATION: Please verify this section and complete any missing information**

| | | | |
|---|---|---|---|
| Customer: JACKIE'S COOKIE CONNECTION, LLC | | | |
| Billing Address: 12109 Santa Monica Blvd | | | |
| City: Los Angeles | State: CA | Zip: 90025 | County: Los Angeles |
| Federal Tax ID: [redacted] | | State of Incorporation: CA | |
| Business Phone: (310) 426-8069 | Fax: | Email: [redacted] | |

**EQUIPMENT DESCRIPTION:**

All personal property as set forth on the below invoice number(s) dated as listed, including all attachments, accessories and inclusions per invoice and all replacement parts, additions, repairs, accessions, attachments and accessories now or hereafter incorporated in or affixed to it, the "Equipment".

Supplier(s) and Invoice Number(s):

Refer to Uni-Systems Invoice # 953-001590

See the attached invoice(s) for Equipment listing purposes only. You acknowledge that You are choosing to finance the purchase of this Equipment over time per the terms and conditions of this EFA rather than the cash price listed on the invoice(s).

Equipment Location (if different from Billing): 12109 Santa Monica Blvd LOS ANGELES CA 90025

**EFA TERMS and CONDITIONS:**

Your Monthly Payment is set forth below and is due in advance on the due date to be established by Us on our acceptance of this Equipment Schedule. This Equipment Schedule shall commence upon Our written acceptance or other authentication on the Commencement Date. This is a noncancelable, irrevocable agreement; it cannot be canceled or terminated.

| EFA TERM: | MONTHLY PAYMENT: | UPFRONT PAYMENT AMOUNTS: |
|---|---|---|
| 60 Months<br>(term is monthly unless otherwise indicated)<br><br>Rate Factor: 0.0217184 | $1,841.69 | Security Deposit $0.00<br>Advance Payment $0.00<br>Processing Fees $469.00 |

Delivery Guaranty Option: In reliance on your promise to pay Us and subject to EFA terms, We may, at your verbal direction and subject to credit approval, pay Supplier(s) prior to Equipment delivery. In such case, You understand that despite the fact that some or all of the Equipment has not been delivered or installed, You authorize Us to pay Supplier(s) and Your obligations under this EFA will commence immediately. You understand and agree that if You are not satisfied with any part of the Equipment, You will only look to persons other than Us, such as the Supplier, manufacturer, vendor, installer or carrier and shall not assert against Us any claim or defense that You may have with the Equipment, installation or delivery.

Pay Proceeds Direction: You hereby irrevocably instruct Us to disburse proceeds of this EFA to the Supplier(s) listed above in the amounts listed on the attached invoice(s). Disbursement by Us in accordance with these instructions shall be and constitute payment and delivery to and receipt by You of any and all such proceeds.

**EQUIPMENT DELIVERY & ACCEPTANCE:**

You certify that all Equipment has been furnished and delivery and installation and other work necessary prior to use has been fully completed to your satisfaction. Equipment is in good condition, working order and repair and in compliance with your requirements. You authorize Us to pay the Equipment Supplier(s) pursuant to the attached invoice(s) and your Pay Proceeds Direction any and all amounts not previously paid pursuant to the Delivery Guaranty Option. Upon signing or authenticating below, your promises herein will be irrevocable and unconditional in all respects and you irrevocably accept the Equipment "as is", "where is" and without recourse, representation or warranty of any kind express or implied.

Client: JACKIE'S COOKIE CONNECTION, LLC

x [signature]
Rachel Gallant Member Date of Delivery & Acceptance

**EFA ACCEPTANCE:**

| | |
|---|---|
| Customer: JACKIE'S COOKIE CONNECTION, LLC | Secured Party: Direct Capital Corporation |
| x [signature] 3/21/16<br>Rachel Gallant Member Date | x [signature]<br>Authorized Representative<br>Commencement Date: 4-12-16 |

Copyright © [illegible] Direct Capital Corp. All rights reserved.
[illegible]

EXHIBIT 1

UNI-SYSTEMS

848 N. Rainbow Blvd #2231, Las Vegas, NV 89107
Tel: 1-866-374-6689 | Fax 1-866-374-6329

# DEPOSIT INVOICE

Order Number: [redacted]
Order Date: 3/8/2016
Page: 1 of 1
Customer ID: [redacted]3652

| Sold To | Ship To |
|---|---|
| DIRECT CAPITAL<br>A DIVISION OF CIT BANK, NA<br>155 COMMERCE WAY<br>PORTMOUTH, NH 03801<br><br>Tax No [redacted] | JACKIE'S COOKIE CONNECTION, LLC<br>12109 SANTA MONICA BLVD<br>LOS ANGELES, CA 90025<br>USA |

| CUSTOMER P.O. | SHIP DATE | PAYMENT TERMS | SHIPPING METHOD | SHIPPING TERMS | SALES REP |
|---|---|---|---|---|---|
| | 4/5/2016 | 35/65 | YRC TRUCKING | FCA-DELTA | 240-SA |

| # | PART ID | DESCRIPTION | QTY | UNIT PRICE | EXTENDED PRICE |
|---|---|---|---|---|---|
| 1 | DOP6600 | M-DOPOSITOR 18" 60CPM<br>Ship by : 4/5/2016<br>Standard Cookie Depositor<br><br>per quote Opportunity# A000CEX (March 1,2016) | 1 | 109,949.00 | 109,949.00 |
| 2 | 04500-US | TECHNICIAN COMMISSIONING/TRAINING<br>Ship by : 4/5/2016<br>2 days on site Installation, Commisioning, and Training by one Unifiller Technician | 1 | 3,845.00 | 3,845.00 |
| 3 | 04599-US | SHIPPING AND HANDLING<br>Ship by : 4/5/2016 | 1 | 700.00 | 700.00 |

| | |
|---|---|
| SUB TOTAL | $114,494.00 |
| TAX LA, LOS ANGELES | $10,304.46 |
| TOTAL ORDER AMOUNT | $124,798.46 |

JACKIE'S COOKIE CONNECTION, LLC – 35% Payment $43,679.46 USD
KRISTOPHER TOZIER 35% PAYMENT - $43,679.46 USD
KIRK SALTENBERGER 30% PAYMENT $37,739.40 USD

*****ALL ITEMS ARE MADE FROM STAINLESS STEEL UNLESS OTHERWISE NOTED*****

**ORDER ACKNOWLEDGEMENT ONLY - INVOICE TO FOLLOW**
**ALL GOODS MANUFACTURED IN CANADA**
**ALL GOODS REMAIN THE PROPERTY OF SELLER UNTIL PAID IN FULL**
We sincerely appreciate your order for the items described above. If this acknowledgement is not correct in any way,

please notify me immediately so we may make the needed corrections before your order is processed.

Print Name Signature Date

USVMORDFM1

EXHIBIT 1

DIRECTCAPITAL

# PREPAYMENT ADDENDUM

**Eq. Schedule No.** [redacted]038

This Prepayment Addendum ("Addendum") supplements and amends that certain equipment finance agreement, lease, rental or installment payment or similar agreement identified by the Direct Capital schedule number set forth above ("Schedule") between Direct Capital Corporation ("Direct Capital"), as secured party or lessor, and JACKIE'S COOKIE CONNECTION, LLC, as debtor or lessee, and pertaining to the property being financed by and described in the Schedule. The following is hereby added as a new section to the Schedule:

"Prepayment: Notwithstanding any other provision of this Schedule to the contrary, and provided no Default shall have occurred and is continuing under this Schedule or any other agreement with Direct Capital, you may prepay this Schedule at any time, in whole but not in part, by paying Direct Capital an amount equal to the Unpaid Balance. "Unpaid Balance" shall mean, with respect to this Schedule, as of the date of any such permitted prepayment thereunder, the sum of: (i) all amounts then due and owing by you under this Schedule, plus (ii) the discounted present value of all future monthly scheduled payments to be owed by you during the balance of the term of this Schedule, calculated using a discount rate equal to that used by Direct Capital to calculate the monthly payment amount under this Schedule, plus (iii) plus all applicable taxes, if any, arising out of such prepayment. Direct Capital shall specify the Unpaid Balance which, absent manifest error, shall be binding and conclusive. No prepayment penalty shall be added to the Unpaid Balance."

You agree that a facsimile or other copy of this Addendum, as executed, shall be deemed the equivalent of an originally executed copy for all purposes, and except as amended by this Addendum, the Schedule remains in full force and effect.

Customer: JACKIE'S COOKIE CONNECTION, LLC

x [signature] 3/21/16
Rachel Gahart (Date)

**ACCEPTED BY Direct Capital Corporation**

X [signature] 4-12-16
(Date)

EXHIBIT 1

This ACKNOWLEDGEMENT reflects the information received from the California Department Of State.

## UCC FINANCING STATEMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
Corporation Service Company 1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscinfo.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

114482404 - 365760
Corporation Service Company
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: California (S.O.S.)

Initial Filing #: 167519266619
Initial Book #:
Initial Page #:
Initial Filing Date: 4/12/2016

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1. DEBTOR'S NAME: Provide only one Debtor name (1a or 1b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 1b, leave all of item 1 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

1a. ORGANIZATION'S NAME JACKIE'S COOKIE CONNECTION, LLC

OR 1b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

1c. MAILING ADDRESS 12109 SANTA MONICA BLVD | CITY LOS ANGELES | STATE CA | POSTAL CODE 90025 | COUNTRY USA

2. DEBTOR'S NAME: Provide only one Debtor name (2a or 2b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name); if any part of the Individual Debtor's name will not fit in line 2b, leave all of item 2 blank, check here ☐ and provide the Individual Debtor information in item 10 of the Financing Statement Addendum (Form UCC1Ad)

2a. ORGANIZATION'S NAME

OR 2b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

2c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

3. SECURED PARTY'S NAME (or NAME of ASSIGNEE of ASSIGNOR SECURED PARTY): Provide only one Secured Party name (3a or 3b)

3a. ORGANIZATION'S NAME CHTD COMPANY

OR 3b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

3c. MAILING ADDRESS P.O. BOX 2576 | CITY SPRINGFIELD | STATE IL | POSTAL CODE 62708 | COUNTRY USA

4. COLLATERAL: This financing statement covers the following collateral:

ALL ACCOUNTS, CHATTEL PAPER, DOCUMENTS, INSTRUMENTS, GENERAL INTANGIBLES, PAYMENT INTANGIBLES, GOODS, INVENTORY, INVESTMENT PROPERTY, RENTS, AND INCOME NOW EXISTING OR HEREAFTER ARISING. ALL MACHINERY AND EQUIPMENT, WHETHER NOW OWNED OR HEREAFTER ACQUIRED, TOGETHER WITH ALL REPLACEMENTS, PARTS, REPAIRS, ADDITIONS, ACCESSIONS AND ACCESSORIES INCORPORATED THEREIN OR AFFIXED THERETO AND ANY AND ALL PROCEEDS OF THE FOREGOING, INCLUDING, WITHOUT LIMITATION, INSURANCE RECOVERIES.

THE SECURED PARTY NAMED IN THIS RECORD IS ACTING IN A REPRESENTATIVE CAPACITY FOR PURPOSES OF FORWARDING NOTICES & INQUIRIES REGARDING THIS RECORD. FOR MORE INFORMATION, PLEASE CONTACT THE SECURED PARTY AT THE ADDRESS LISTED ABOVE OR AT UCCSPREP@CSCINFO.COM

5. Check only if applicable and check only one box: Collateral is ☐ held in a Trust (see UCC1Ad, item 17 and Instructions) ☐ being administered by a Decedent's Personal Representative

6a. Check only if applicable and check only one box: ☐ Public-Finance Transaction ☐ Manufactured-Home Transaction ☐ A Debtor is a Transmitting Utility

6b. Check only if applicable and check only one box: ☐ Agricultural Lien ☐ Non-UCC Filing

7. ALTERNATIVE DESIGNATION (if applicable): ☐ Lessee/Lessor ☐ Consignee/Consignor ☐ Seller/Buyer ☐ Bailee/Bailor ☐ Licensee/Licensor

8. OPTIONAL FILER REFERENCE DATA: [illegible]038

EXHIBIT 2

# UCC FINANCING STATEMENT ADDENDUM

FOLLOW INSTRUCTIONS

9. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

9a. ORGANIZATION'S NAME
JACKIE'S COOKIE CONNECTION, LLC

OR 9b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

10. DEBTOR'S NAME: Provide (10a or 10b) only one additional Debtor name or Debtor name that did not fit in line 1b or 2b of the Financing Statement (Form UCC1) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name) and enter the mailing address in line 10c

10a. ORGANIZATION'S NAME

OR 10b. INDIVIDUAL'S SURNAME

INDIVIDUAL'S FIRST PERSONAL NAME

INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

11. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (11a or 11b)

11a. ORGANIZATION'S NAME

OR 11b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

11c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

12. ADDITIONAL SPACE FOR ITEM 4 (Collateral):

See Below additional collateral description:

QTY 1 00103-1 PRJG_Depositor for Cookie Babies DOP6600

13. ☐ This FINANCING STATEMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS (if applicable)

14. This FINANCING STATEMENT:
☐ covers timber to be cut ☐ covers as-extracted collateral ☐ is filed as a fixture filing

15. Name and address of a RECORD OWNER of real estate described in item 16 (if Debtor does not have a record interest):

16. Description of real estate:

17. MISCELLANEOUS:
Special Instructions Paper File

Corporation Service Company
2711 Centerville Rd, Ste 400
Wilmington, DE 19808

EXHIBIT 2

This ACKNOWLEDGEMENT reflects the information received from the California Department Of State.

# UCC FINANCING STATEMENT AMENDMENT

FOLLOW INSTRUCTIONS

A. NAME & PHONE OF CONTACT AT FILER (optional)
CSC 1-800-858-5294

B. E-MAIL CONTACT AT FILER (optional)
SPRFiling@cscglobal.com

C. SEND ACKNOWLEDGMENT TO: (Name and Address)

1474 38263
CSC
801 Adlai Stevenson Drive
Springfield, IL 62703

Filed In: California (S.O.S.)

Filing #: 1876517039
Book #:
Page #:
Filing Date: 6/4/2018

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

1a. INITIAL FINANCING STATEMENT FILE NUMBER
167519266619 04/12/2016

1b. ☐ This FINANCING STATEMENT AMENDMENT is to be filed [for record] (or recorded) in the REAL ESTATE RECORDS
Filer: attach Amendment Addendum (Form UCC3Ad) and provide Debtor's name in item 13

2. ☐ TERMINATION: Effectiveness of the Financing Statement identified above is terminated with respect to the security interest(s) of Secured Party authorizing this Termination Statement

3. ☐ ASSIGNMENT (full or partial): Provide name of Assignee in item 7a or 7b, and address of Assignee in item 7c and name of Assignor in item 9
For partial assignment, complete items 7 and 9 and also indicate affected collateral in item 8

4. ☐ CONTINUATION: Effectiveness of the Financing Statement identified above with respect to the security interest(s) of Secured Party authorizing this Continuation Statement is continued for the additional period provided by applicable law

5. ☐ PARTY INFORMATION CHANGE:
Check one of these two boxes: This Change affects ☐ Debtor or ☐ Secured Party of record
AND Check one of these three boxes to: ☐ CHANGE name and/or address: Complete item 6a or 6b; and item 7a or 7b and item 7c ☐ ADD name: Complete item 7a or 7b, and item 7c ☐ DELETE name: Give record name to be deleted in item 6a or 6b

6. CURRENT RECORD INFORMATION: Complete for Party Information Change - provide only one name (6a or 6b)
6a. ORGANIZATION'S NAME JACKIE'S COOKIE CONNECTION, LLC
OR 6b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

7. CHANGED OR ADDED INFORMATION: Complete for Assignment or Party Information Change - provide only one name (7a or 7b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)
7a. ORGANIZATION'S NAME
OR 7b. INDIVIDUAL'S SURNAME
INDIVIDUAL'S FIRST PERSONAL NAME
INDIVIDUAL'S ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX
7c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

8. ☑ COLLATERAL CHANGE: Also check one of these four boxes: ☐ ADD collateral ☑ DELETE collateral ☐ RESTATE covered collateral ☐ ASSIGN collateral
Indicate collateral:
ALL ACCOUNTS

9. NAME OF SECURED PARTY OF RECORD AUTHORIZING THIS AMENDMENT: Provide only one name (9a or 9b) (name of Assignor, if this is an Assignment)
If this is an Amendment authorized by a DEBTOR, check here ☐ and provide name of authorizing Debtor
9a. ORGANIZATION'S NAME CHTD COMPANY
OR 9b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

10. OPTIONAL FILER REFERENCE DATA: [redacted]038 Debtor:JACKIE'S COOKIE CONNECTION, LLC-1215038 [redacted]263

FILING OFFICE COPY — UCC FINANCING STATEMENT AMENDMENT (Form UCC3) (Rev. 04/20/11)
This document was auto-generated from data received from the California Department of State

EXHIBIT 2

# UCC FINANCING STATEMENT ADDITIONAL PARTY

FOLLOW INSTRUCTIONS

18. NAME OF FIRST DEBTOR: Same as line 1a or 1b on Financing Statement; if line 1b was left blank because Individual Debtor name did not fit, check here ☐

18a. ORGANIZATION'S NAME

OR 18b. INDIVIDUAL'S SURNAME

FIRST PERSONAL NAME

ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

THE ABOVE SPACE IS FOR FILING OFFICE USE ONLY

19. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (19a or 19b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

19a. ORGANIZATION'S NAME

OR 19b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

19c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

20. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (20a or 20b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

20a. ORGANIZATION'S NAME

OR 20b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

20c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

21. ADDITIONAL DEBTOR'S NAME: Provide only one Debtor name (21a or 21b) (use exact, full name; do not omit, modify, or abbreviate any part of the Debtor's name)

21a. ORGANIZATION'S NAME

OR 21b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

21c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

22. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (22a or 22b)

22a. ORGANIZATION'S NAME

OR 22b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

22c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

23. ☐ ADDITIONAL SECURED PARTY'S NAME or ☐ ASSIGNOR SECURED PARTY'S NAME: Provide only one name (23a or 23b)

23a. ORGANIZATION'S NAME

OR 23b. INDIVIDUAL'S SURNAME | FIRST PERSONAL NAME | ADDITIONAL NAME(S)/INITIAL(S) | SUFFIX

23c. MAILING ADDRESS | CITY | STATE | POSTAL CODE | COUNTRY

24. MISCELLANEOUS:
Special Instructions Paper File

EXHIBIT 2